IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 19, 2002

## JOHN ROBERT BENSON v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Bedford County**
**No. 8659     Charles Lee, Judge**

---

**No. M2001-02510-CCA-R3-PC - Filed December 12, 2002**

---

The petitioner was convicted of two counts of attempted first degree murder and three counts of reckless endangerment and received an effective sentence of thirty years. On direct appeal, this court affirmed the petitioner's convictions and sentence. The petitioner now contends that his trial counsel provided ineffective representation. After reviewing the record, we conclude that the petitioner has failed to meet his burden of demonstrating that his trial counsel provided ineffective assistance. Accordingly, we affirm the denial of the petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and ROBERT W. WEDEMEYER, JJ., joined.

Larry F. Wallace, Jr., Shelbyville, Tennessee, for the appellant, John Robert Benson.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William Michael McCown, District Attorney General; and Robert Crigler, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On March 7, 1998, the petitioner, John Robert Benson, was convicted by a jury of two counts of attempted first degree murder and three counts of reckless endangerment. On April 20, 1998, the trial court sentenced him as a Range I offender to concurrent sentences of twenty-two years for the attempted first degree murder convictions, and as a Range II, multiple offender to four years for each reckless endangerment conviction. The petitioner received concurrent terms for two of the three reckless endangerment convictions, and was ordered to serve the reckless endangerment sentences consecutively to the attempted first degree murder sentences, for an effective sentence of thirty years. On direct appeal to this court, he challenged the sufficiency of the evidence to sustain his convictions

and the length of his sentence. This court denied relief. See State v. John Robert Benson, No. 01C01-9806-CC-00239, 2000 WL 19535, at *1 (Tenn. Crim. App. Jan. 13, 2000), perm. to appeal denied (Tenn. Oct. 16, 2000).

The petitioner then filed a *pro se* petition for post-conviction relief, alleging ineffective assistance of trial counsel. Counsel was appointed, and an amended petition was filed. After an evidentiary hearing, the post-conviction court denied the petition. A timely notice of appeal was filed. Although a number of claims of ineffective assistance were asserted in his *pro se* petition, amended petition, and at the post-conviction hearing, the petitioner confines himself on appeal to arguing that trial counsel provided ineffective assistance by failing to move for a mistrial based on an incident of pretrial "misidentification" of the petitioner.

## Trial

The facts surrounding the petitioner's convictions involve a shooting that occurred at the Shelbyville, Tennessee, apartment of Jenine McBride in the early morning hours of August 17, 1997.[1] Present at the apartment were Jenine McBride, James McBride, Andrew Rankins, Trishia Pease, and Ashley Benson. Ashley Benson, who was twenty months old at the time, is the daughter of the petitioner and Trishia Pease. The relationship between the two ended about a month before the shooting, and Pease had since become romantically involved with Rankins.

At trial, Rankins testified that, sometime before sunrise, he heard gunshots coming from the front of the apartment. Rankins then proceeded to the living room where he observed a man armed with a rifle and wearing a stocking to cover his face. After unsuccessfully attempting to stop the intruder from entering the house, Rankins grabbed the barrel of the rifle and both men fell to the floor. During the ensuing struggle, the intruder's face was exposed. Rankins testified that, despite the darkness of the room, he was able to observe the intruder's face "clearly" for about two minutes before he fled the apartment. According to his testimony, Rankins recognized the intruder as the petitioner and told him during the struggle, "You could have killed your baby." Id. at *1. Although unable to positively identify the intruder, James McBride testified that the petitioner's "stocky" build matched that of the intruder. Id. at *3.

Members of the Shelbyville Police Department arrived shortly thereafter and interviewed the witnesses at the apartment. Some of those questioned stated that there may have been two intruders. Rankins indicated that he believed the gunman to be the petitioner, and Pease gave the police a description of the petitioner's car.

Approximately fifteen minutes later, the police apprehended Timmy Reese, the petitioner's cousin, and brought him to the apartment for a "show-up" identification. The testimony differs as to what occurred next. Rankins testified that, although he was initially unsure whether Reese was the intruder, he stated, "No, that's not the guy" after Pease explained that Reese was the petitioner's

---

[1]See Benson, 2000 WL 19535, at **1-5, for a more detailed version of the facts of the shooting and trial.

cousin.  Id. at *2.  Officer Trey Clanton was present during the identification and testified that Rankins looked at Reese and said, "I'm not sure if this is him" and then, "No, it's not him."  Id. at *4.  Pease testified, however, that Rankins affirmatively identified Reese as the intruder before learning that the suspect's name was Timmy Reese. It was only then, Pease testified, that Rankins claimed that Reese was "not the guy."  It is this "misidentification" that forms the factual basis of the petitioner's appeal.

Approximately ten minutes later, the petitioner, who lived in Fayetteville, was apprehended in Shelbyville in his car a few blocks away from the scene of the shooting.  Rankins and Pease were brought to the site of the arrest and, according to Officer Clanton, Rankins immediately identified the petitioner as the shooter exclaiming, "This is the man that was inside the house."  Id.  At trial, Rankins again identified the petitioner as the gunman, testifying that he was "positive" and "certain" of the identification.  Id. at *2.

At trial, the petitioner denied any participation in the shooting, and his sister testified that he was with her the night before the shooting.  According to her testimony, they returned to her apartment, she went to bed by 4:00 a.m., and, sometime between 6:00 and 6:30 a.m., the petitioner woke her to say that he was leaving.

## Evidentiary Hearing

Three witnesses testified at the evidentiary hearing:  two investigators for the public defender's office and the assistant district public defender who represented the petitioner at trial.  Only trial counsel's testimony is relevant to the issue raised on appeal.  The petitioner did not testify on his behalf at the evidentiary hearing.

In the opinion of trial counsel, there was, in fact, a misidentification.  He testified that the State failed to give notice of any misidentification although it was exculpatory evidence which should have been produced.  Apparently, the trial judge had asked trial counsel if he was going to move for a mistrial in light of the State's failure to produce evidence of the misidentification.  Explaining why he did not move for a mistrial, trial counsel testified:

> I think the Judge made that offer to me.  But I think he also said something to the effect you can't have your cake and eat it, too.  He was asking that because the State had technically failed to comply with discovery on the misidentification by Andrew Rankins.  That was something I was fully informed of through interviews with Tricia [sic] Pease.  I knew full well what had happened or what he was going to say happened.  So it would have been a little hard to say Judge, here is some exculpatory evidence.  We would like an opportunity to explore that when I was better informed about it than probably the State was.  So I guess if I had moved for a mistrial and the Judge had granted it, that would have given the State a greater

-3-

period of time to do damage control on that misidentification than forging ahead at trial. I didn't think it was wise at that time [to move for a mistrial] because I think I thought we had the upper hand. We had knowledge of misidentification. I don't think [the State] did.

Trial counsel has been licensed to practice law since 1991, and most of his practice has consisted of criminal defense work. Explaining that the element of surprise is "[o]ne of the few advantages the defense has," he testified that this was a calculated tactical decision aimed at precluding the State from using their identification evidence. Additionally, he testified that his strategy for trial was to highlight the deficiencies with regard to the police department's investigation of the shooting.

At the conclusion of the hearing, the post-conviction court denied the petition, finding that the petitioner had failed to carry his burden of demonstrating ineffective assistance of counsel. Specifically, the post-conviction court found that trial counsel "exercised more than adequate judgment in his presentation of the [petitioner's] proof" and performed better "than anyone could have expected" in light of the State's "overwhelming case against the [petitioner]."

## ANALYSIS

The sole issue raised on appeal is whether the conduct of the petitioner's trial counsel was within the standard demanded of competent defense counsel. Specifically, the petitioner asserts that his trial counsel's performance was deficient because he chose not to move for a mistrial based on the pretrial incident of "misidentification."

### I. Post-Conviction Standard of Review

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issues of deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact and, thus, subject to *de novo* review by the appellate court. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

### II. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient, and that counsel's deficient performance

-4-

prejudiced the outcome of the proceeding.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see also State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee).  The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms."  Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)).  The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

Because both prongs of the test must be satisfied, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim.  See Henley, 960 S.W.2d at 580.  For this reason, courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one."  466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

On appeal, the only issue raised is whether trial counsel provided ineffective assistance by failing to move for a mistrial.  At the evidentiary hearing, however, the petitioner did not testify or offer an instance of trial counsel's alleged inadequate performance or any resulting prejudice.  Post-conviction petitions and hearings are governed by the Post-Conviction Procedure Act of 1995 which mandates that "[t]he petitioner shall appear and give testimony at the evidentiary hearing if such petition raises substantial questions of fact as to events in which the petitioner participated" and that "[t]he petitioner shall have the burden of proving the allegations of fact by clear and convincing evidence."  See Tenn. Code Ann. § 40-30-210(a), (f).

During the hearing, the petitioner merely questioned his defense team about the events of the trial and pretrial investigation.   In matters of the credibility of witnesses, we defer to the judgment of the post-conviction court.  Michael Russo v. State, No. M2000-00919-CCA-R3-PC, 2001 WL

605156, at *8 (Tenn. Crim. App. June 5, 2001). Trial counsel defended his strategical decision to not move for a mistrial, and the petitioner presented no proof to the contrary to demonstrate deficient performance or prejudice. For the petitioner's petition to succeed, we would have to assume that both trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. Neither assumption is justified in any way.

Applying the Strickland holding that we must "evaluate the conduct from counsel's perspective at the time" the decisions had to be made, that we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," 466 U.S. at 689, 104 S. Ct. at 2065, and that in challenging counsel's conduct a petitioner must show that "no competent counsel would have taken the action," Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000), cert. denied, 531 U.S. 1204, 121 S. Ct. 1217, 149 L. Ed. 2d 129 (2001), we conclude that the petitioner has failed to show that his trial counsel did not perform within the range of competence required of attorneys in criminal cases.

## CONCLUSION

Having reviewed the entire record in this case, we conclude that the petitioner has failed to meet his burden of demonstrating that he was denied the effective assistance of counsel. Accordingly, we affirm the post-conviction court's denial of the petition.

_____
ALAN E. GLENN, JUDGE