IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 8, 2007

## RASHAD JAMAL CHANDLER v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-28551      Joseph B. Dailey, Judge**

_____

**No. W2006-02130-CCA-R3-PC  - Filed June 19, 2007**

_____

The petitioner, Rashad Jamal Chandler, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief from his conviction for first degree premeditated murder and resulting life sentence.  He contends that he received the ineffective assistance of counsel because his trial attorney (1) failed to interview witnesses who would have helped his case and (2) should have argued a different theory of defense.  Based upon the record and the parties' briefs, we affirm the post-conviction court's denial of the petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JERRY L. SMITH, J., joined.

Charles W. Gilchrist, Jr., Memphis, Tennessee, for the appellant, Rashad Jamal Chandler.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and Theresa McCusker, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

In 2003, a jury convicted the petitioner of shooting and killing Roy Lee Monger in the victim's grandmother's front yard.  See State v. Rashad J. Chandler, No. W2001-01565-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 464, at *2 (Jackson, May 15, 2003), perm. to appeal denied, (Tenn. 2003).  At trial, the State introduced into evidence a statement the petitioner gave to police in which he admitted killing the victim.  Id. at *3.  According to the petitioner's statement, he shot the victim because the victim had been threatening to kill him.  Id. at **17-18.  A State witness testified at trial that the petitioner told her he was going to kill the victim because the victim had threatened him with a gun, and the defense's only witness testified that there

had been some level of conflict between the petitioner and the victim in the weeks before the shooting. Id. at *17. Although the petitioner had been charged with first degree premeditated murder, first degree felony murder, and especially aggravated robbery, the jury acquitted him of the latter two charges. Id. at *1.

Subsequently, the petitioner filed a petition for post-conviction relief, arguing that he received the ineffective assistance of trial counsel. At the evidentiary hearing, the twenty-eight-year-old petitioner testified that the trial court first appointed Wayne Chastain to represent him but that Chastain passed away. The trial court then appointed attorney Mike Roberts to the petitioner's case. The petitioner's family hired Sam Perkins to replace Roberts, but Perkins later had to withdraw from the case because Perkins learned he was related to the victim. The petitioner's family then hired his fourth and final attorney, trial counsel. At trial, the petitioner learned that trial counsel and Perkins had become law partners. The petitioner stated that counsel and Perkins never discussed this conflict with him. The petitioner thought the partnership "was a problem," but counsel had been representing the petitioner for six or seven months by the time the petitioner learned about the partnership, and the petitioner did not believe he had any choice but to go to trial with current counsel.

The petitioner testified that trial counsel visited him in jail two times before trial and that they discussed the case but did not discuss any defense tactics. The petitioner's trial kept being postponed, and the petitioner spent four years in jail before trial. On the day of trial, counsel told the petitioner that the petitioner would not go to trial that day. However, a jury was selected "all of a sudden." The petitioner did not know what type of defense counsel was going to present at trial. He said that counsel "tried to use self-defense, I guess. I don't know. I couldn't really say what type [of defense he used]." He acknowledged that he admitted shooting the victim and stated that he knew he was going to be found guilty of a crime. Although counsel had hoped the jury would convict the petitioner of a lesser included offense, counsel did not make that argument to the jury.

The petitioner testified that Wayne Chastain had hired Private Investigator Otis Russell to work on his case. Russell met with the petitioner in jail and interviewed witnesses. However, Russell was not present at trial and did not meet with the petitioner before trial. The petitioner stated that trial counsel should have investigated his case and should have interviewed witnesses who "could enlighten him to a lot of things that was going on in the case" and about prior incidents between the petitioner and the victim. The petitioner acknowledged that witnesses would have been able to testify about his prior contacts with the victim and about what actually happened on the night of the shooting. He stated that counsel should have interviewed Rita Driver, the victim's ex-girlfriend, because she told Russell that the victim had threatened to kill the petitioner weeks before the murder. The petitioner stated that counsel also should have argued to the jury "that it was aggression on both sides of the line instead of just saying, 'My client didn't commit this murder,' or something like that." The petitioner acknowledged that counsel argued during his closing statement that the petitioner was not guilty of first degree murder. The petitioner's mother, an attorney, brought one witnesses to trial to testify on the petitioner's behalf. Although trial counsel told the petitioner that he had a right to testify, counsel told the petitioner that it would be better if he did not testify, and the petitioner took counsel's advice. The petitioner stated that counsel could

have argued a different defense strategy, should not have persuaded him not to testify, and could have investigated his case "a little bit more." Counsel filed a motion to suppress the petitioner's confession, but the trial court denied the motion.

The petitioner testified that the trial court appointed trial counsel to represent the petitioner on direct appeal. Trial counsel told the court that he did not have any appellate experience, and the trial court told the petitioner that he would allow counsel to withdraw from the petitioner's case if the petitioner found a new attorney to replace counsel. However, the trial court later refused to let counsel withdraw from the case. On direct appeal, counsel argued that the trial court should have suppressed the petitioner's confession and that the evidence was insufficient to support the conviction. After this court denied relief, counsel's mother helped him file a Rule 11 application for permission to appeal to the supreme court.

On cross-examination, the petitioner testified that when he first learned counsel and Perkins were law partners, he told his mother he had a problem with the partnership but did not tell anyone in the courtroom because "[t]hey didn't give me a chance to." On the day of trial, counsel was unprepared because he had not investigated the petitioner's case. The petitioner had given counsel witness names, but counsel did not talk to any of them. The petitioner acknowledged that the trial court held a <u>Momon</u> hearing regarding his right to testify and that counsel did not refuse to let him testify. The petitioner had been charged with first degree premeditated murder and first degree felony murder. He stated that counsel argued against the felony murder conviction at trial and that the jury acquitted him of that offense. However, counsel did not argue against the premeditated murder charge, and the jury found the petitioner guilty. The petitioner stated that attorney Glen Rome agreed to handle his direct appeal but that the trial court would not allow Rome to take over the appeal because trial counsel waited too long to withdraw from the petitioner's case.

Trial counsel testified that at the time of the evidentiary hearing, he had been an attorney for almost fourteen years and had practiced criminal law during that time. He did not remember if the petitioner's case was his first murder case. At the time he agreed to represent the petitioner, he and Sam Perkins were not sharing an office and were not law partners. However, by the time of the petitioner's trial, counsel and Perkins had become partners. Counsel told the trial court, the petitioner, and the petitioner's family about the partnership and no one expressed a problem with it. Counsel stated that he saw no conflict in the partnership because he never talked with Perkins about the case. Counsel stated that self-defense was not a good defense strategy in this case because the petitioner went to the victim's home with a weapon and a ski mask. Instead, counsel tried to argue "some quasi version of justification" for the shooting. He said that the defense's theory of the case was that the victim was a bad person and that the petitioner had reason to fear the victim because the victim had threatened the petitioner previously. Counsel spoke with some witnesses and spoke with Otis Russell several times. Russell told counsel that it had been years since he had worked on the petitioner's case and that he was not interested in testifying. Counsel threatened to subpoena Russell, but Russell told counsel he would not testify favorably for the petitioner and that "[y]ou just don't want to do that."

Counsel testified that he advised the petitioner not to testify because all the petitioner could say on his behalf was that he and the victim had a pre-existing animosity between them, which counsel believed could have established a motive for the shooting. After the trial court appointed counsel to represent the petitioner on appeal, counsel wanted to withdraw from the case. However, he did not file a motion to withdraw because he "probably just forgot to do it." Counsel talked with the trial court, and the trial court told him that it would allow a substitute lawyer if counsel found another lawyer to handle the petitioner's appeal. Counsel would have been happy to let Glen Rome take over the petitioner's direct appeal, but Rome never contacted counsel or the trial court about it.

On cross-examination, counsel testified that he did not hire another investigator for this case because he thought Otis Russell did a good job. Counsel thought he had all the information he needed to handle the case and learned nothing new that needed investigating. Counsel acknowledged that one witness testified for the defense and that she "went pretty much along with [the defense] theory." Counsel filed a motion to suppress the petitioner's statement on the grounds that the petitioner gave the statement under duress, was harassed, and was physically assaulted. However, at the suppression hearing, the petitioner's testimony "was totally a one-eighty from what I was led to believe the testimony would be." Counsel spoke with the petitioner four or five times before trial. After the trial, counsel spoke with the jurors, and they told him that "they wanted to let [the petitioner] go, but they couldn't get around his confession." Counsel stated that testimony at trial indicated the victim may have been armed at the time of the shooting but that the information did not seem to make a difference to the jury. He stated that on reflection, he thought he did an "okay job" with the petitioner's case.

In a written order, the post-conviction court concluded that the petitioner's "allegations regarding a failure to investigate and a failure to adequately develop a theory of defense are . . . not well-taken." The court noted that counsel testified he investigated the case, discussed the case with the petitioner, and gave "considerable thought" to the petitioner's defense. Given the petitioner's confession, counsel ruled out arguing that the petitioner acted in self-defense or was not guilty and instead argued that the petitioner was guilty of a lesser degree of homicide. The post-conviction court concluded that counsel represented the petitioner "well" and denied the petition for post-conviction relief.

## II. Analysis

On appeal, the petitioner maintains that he received the ineffective assistance of counsel because trial counsel (1) failed to interview witnesses that would have helped his case and (2) should have argued a different theory of defense. The State contends that the petitioner received the effective assistance of counsel. We agree with the State.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). To establish

deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

Regarding the petitioner's claim that counsel failed to interview witnesses who would have helped his case, the petitioner failed to present any of these witnesses at the hearing. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We may not speculate on what benefit these witnesses might have offered to the petitioner's case, nor may we guess as to what evidence further investigation may have uncovered. See id. Accordingly, the petitioner has failed to demonstrate prejudice. As to the petitioner's claim that counsel should have argued a different theory of defense, the petitioner has failed to specify what defense counsel should have presented. Counsel testified that a self-defense theory was not feasible in this case because the evidence showed the petitioner sought out the victim while possessing a weapon and a ski mask. Instead, counsel believed the best theory of defense was to argue that the petitioner may have been justified in shooting the victim because the victim had threatened the petitioner previously. As this court has stated, "Allegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief." Taylor v. State, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991). Thus, we conclude that the petitioner has failed to show that counsel rendered deficient performance in this regard. The post-conviction court properly denied the petition for post-conviction relief.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE