IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 25, 2001

## DAYNELLE M. KYLE v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Knox County**
**No. 70678     Ray L. Jenkins, Judge**

---

**No. E2001-00326-CCA-R3-PC**
**October 18, 2001**

---

The petitioner was convicted of possession of cocaine with intent to sell and sentenced to twelve years in confinement. His conviction was affirmed by this court on direct appeal. He then filed a petition for post-conviction relief alleging, *inter alia*, that trial counsel was ineffective. Following a hearing, the post-conviction court denied relief, and the petitioner appealed. After a thorough review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOE G. RILEY, JJ., joined.

Albert J. Newman, Jr., Knoxville, Tennessee, for the appellant, Daynelle M. Kyle.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Randall E. Nichols, District Attorney General; C. Leon Franks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The petitioner, Daynelle M. Kyle, appeals as of right from the dismissal by the Knox County Criminal Court of his petition for post-conviction relief. He was convicted in October 1997 of one count of possession of .5 grams or more of cocaine with intent to sell, a Class B felony, and received a sentence of twelve years, as a Range I, standard offender, in the Tennessee Department of Correction. The petitioner's conviction was affirmed by this court on direct appeal. See State v. Daynelle M. Kyle, No. 03C01-9808-CR-00273, 1999 WL 410312 (Tenn. Crim. App. June 22, 1999).

On June 5, 2000, the petitioner timely filed a *pro se* petition for post-conviction relief. Subsequently, counsel was appointed and an amended petition was filed on July 11, 2000. In the combined petitions, the following allegations were presented:

(1)   the conviction was based on use of evidence gained pursuant to an unconstitutional search and seizure;

(2)   the conviction was based on use of evidence obtained pursuant to an unlawful arrest;

(3)   the conviction was based on action of a grand or petit jury that was unconstitutionally selected and impaneled;

(4)   the petitioner was denied due process of law by failure of the prosecutor to correct conflicts in the testimony of the State's witnesses; and

(5)   the petitioner was denied effective assistance of counsel based on the following claims: (a) that counsel failed to fully discuss the case or any theories of defense with the petitioner; (b) that counsel failed to file any motions to challenge an illegal search and unlawful arrest; and (c) that counsel failed to challenge the racial makeup of either the grand jury that indicted him or the trial jury that convicted him.

At the post-conviction hearing, the petitioner's counsel advised the court that they were proceeding only as to the claim of ineffective assistance of counsel, namely, how many times trial counsel had met with the petitioner prior to trial, and whether counsel was adequately prepared for the trial.  After the hearing, where both the petitioner and his trial counsel testified, the post-conviction court dismissed the petition.  The petitioner timely appealed, presenting the same issues on appeal.  After examination of the record, we affirm the court's dismissal of the petition for post-conviction relief.

## DISCUSSION

The facts of this case have been set out fully in our opinion on direct appeal:

Officer Donna Mynatt of the Knoxville Police Department testified that on May 23, 1995, she and some other officers were conducting surveillance of a suspected crack house.  Mynatt and the other officers saw several people go into the crack house and when the people came out, the officers stopped them.  Most of the people who came out of the crack house had approximately .25 grams of cocaine and various items considered to be drug paraphernalia.

Mynatt testified that at approximately 12:45 a.m., Appellant [Daynelle M. Kyle] and two other individuals came out of the crack

house and began drinking beer. Mynatt then approached the three individuals and stated, "Hey, I want to talk to you just a second." The three individuals then began running in different directions. Mynatt then radioed for backup as Officer James Quick began pursuit of Appellant. While Quick was running after Appellant, Mynatt saw Quick point to a telephone pole past which he had ran. Shortly thereafter, Appellant stopped running and laid down on the ground. Quick then put handcuffs on Appellant. Quick told Mynatt that Appellant had thrown some cocaine on the ground near the telephone pole. Quick searched Appellant and discovered approximately $500.00 in cash.

Mynatt testified that after she and Quick put Appellant in a patrol car, they returned to the telephone pole. The officers found sixteen small baggies of cocaine in a larger bag of cocaine. Mynatt estimated that the cocaine had a street value of $1,000.00.

. . . .

Appellant testified that he had never been in the suspected crack house. Appellant testified that he was merely in the area when he saw two black men running, so he decided to run for his own protection. Appellant denied ever having possession of the cocaine and he stated that the cash he had in his possession was obtained by gambling. Appellant admitted that he had never had any regular employment.

Kyle, 1999 WL 410312, at *1-2.

## ANALYSIS

### Grounds for Post-Conviction Proceeding

The grounds on which a prisoner may petition the court for post-conviction relief are set out in Tennessee Code Annotated Section 40-30-203: "Relief under this part shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." The Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution are sources of the right of an accused to effective assistance of counsel. Our supreme court has determined that "[t]hese two constitutional provisions are identical in import with the result that a denial of the Sixth Amendment right to the effective assistance of counsel is simultaneously a denial of the right to be heard by counsel, as provided under the Constitution of Tennessee." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Therefore, in order to determine the competence of counsel, Tennessee courts have applied standards developed in federal case law. See State v. Taylor, 968 S.W.2d 900,

905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee).

The U.S. Supreme Court articulated the standard in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which is widely accepted as the appropriate standard for all claims of a convicted petitioner that counsel's assistance was defective. The standard is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results." Id. at 685, 104 S. Ct. at 2063. The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S. Ct. at 2064. The Strickland Court further explained the meaning of "deficient performance" in the first prong of the test in the following way:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

Id. at 688-89, 104 S. Ct. at 2065. Petitioner must therefore, establish that "the advice given or the service rendered was not within the range of competence demanded of attorneys in criminal cases[.]" Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

As for the prejudice prong of the test, the Strickland Court stated: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068; see also Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994) (holding that petitioner failed to establish that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different").

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "failure

-4-

to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

By statute in Tennessee, the petitioner at a post-conviction relief hearing has the burden of proving the allegations of fact by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997). A petition based on ineffective assistance of counsel is a single ground for relief, therefore all factual allegations must be presented in one claim. See Tenn. Code Ann. § 40-30-206(d) (1997). "A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings. Failure to state a factual basis for the grounds alleged shall result in immediate dismissal of the petition." Id.

In this matter, the post-conviction court did not set out written findings of fact and conclusions of law, as required by Tennessee Code Annotated § 40-30-211(b). However, reversal is not necessarily required when the post-conviction court recites from the bench, as occurred here, its findings of fact and conclusions of law. See State v. Higgins, 729 S.W.2d 288, 290-91 (Tenn. Crim. App. 1987); State v. Swanson, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984).

### Claim of Ineffective Assistance of Counsel

The sole issue argued at the post-conviction hearing and on appeal is whether the petitioner received effective assistance of counsel at trial. As articulated by post-conviction counsel at the post-conviction hearing, the question was "how many times [petitioner and trial counsel] had all met and whether or not [the petitioner] believed that that was enough time to properly prepare for a jury trial." The petitioner and trial counsel were the only two witnesses to testify at the post-conviction hearing.

At the hearing, the petitioner testified that he had a fifth grade education and was presently learning how to read and write. He said that someone else had drawn up his post-conviction petition, and he did not understand what was in it. After trial counsel was appointed to represent him, he talked with counsel a total of three to seven times, one of which was in person. All of his conversations with counsel totaled two and one-half to three hours. He gave trial counsel "some names" of witnesses but did not know if counsel ever talked to the witnesses. He could not remember anyone other than himself testifying on his behalf at the trial. He testified that trial counsel was not properly prepared for trial because they had not fully discussed the case. He admitted that he had missed one meeting with counsel because he did not have a ride.

On cross-examination, the petitioner testified that trial counsel was not the original attorney who represented him. Initially, the petitioner had hired Bill Banks, his family attorney since childhood, to represent him. Banks eventually withdrew because of the petitioner's failure to pay him. Petitioner then hired Darryl Humphrey to represent him and said he was "paying payments" to Humphrey even though Humphrey also withdrew as counsel in July 1997 because of the petitioner's failure to pay him.

-5-

The petitioner further testified that he could not remember the last time he had met with trial counsel prior to trial but knew he had met with him once. He said he gave trial counsel the first and last names of some witnesses who would have testified on his behalf at trial. According to the petitioner, these witnesses would have testified that they and the petitioner all ran from the police in the same direction on the morning of the incident and they did not see him throw down any drugs. He said he gave trial counsel the names of Phyllis Stanford and Nathaniel Smith and said they would have testified on his behalf. The petitioner admitted that he gave counsel their names before the trial but did not give him their addresses or phone numbers until the motion for new trial.

Trial counsel testified that he had been practicing law since 1988 and that about ninety-five percent of his private practice was criminal law. When questioned if there was anything unusual about the petitioner's case, counsel responded that "[i]t was his word against the officers." He testified that he had examined the scene of the arrest at night to see what it looked like. He also stated that he had received discovery information from the State and from the petitioner's previous attorney regarding the arrest and the cocaine, but that he had not filed any suppression motion because the petitioner claimed the cocaine was not his.

Counsel acknowledged that he had met with the petitioner "for an hour or so and talked on the phone a couple of times" but that "[the petitioner] didn't come back to the office again, though." Regarding his attempts to meet with the petitioner, counsel testified:

> Q. Okay. Did you try to get him to come in to discuss the case with you?
>
> A. A couple of times.
>
> Q. Okay. And did you see him when he was in jail at some point?
>
> A. Probably. Again, I don't have a direct recollection, but I assume I talked to him while he was in jail.

Counsel further testified that the petitioner did tell him of one or two potential witnesses, but when asked if the petitioner supplied the necessary information concerning the witnesses, counsel testified to the following:

> A He–he might have mentioned a name or two, but I don't recall actually getting any phone numbers or addresses or any way to contact them. I believe I told him to have them come into the office, and he said they'll come testify. Yeah.
>
> Q. Did you ask him–when he told you about these folks, did you ask him if he had addresses and phone numbers for them?

A.  I most likely– I don't have a direct recollection of asking him, but I'm sure I did, if–if he told me names.

Q.  Now, you all were–you all were getting pretty close to trial here at that time; is that correct?

A.  As I recall, I saw him early on at the office, and then as it came closer to trial, I didn't see him as much. He was not in jail prior to trial.

Counsel testified that no witnesses came to the trial to testify on the petitioner's behalf.

Finally, counsel said that when the petitioner showed up on the day of the trial, he asked counsel what the case was set for. Counsel explained that the case had been set for trial on five prior occasions and that he expected to go to trial on that date. Only then, did counsel learn of the petitioner's desire to testify. Counsel said that the petitioner testified at trial freely and voluntarily.

At the conclusion of the hearing, the post-conviction court announced its oral findings of fact and conclusions of law. The court found that trial counsel had relied on the discovery provided by the petitioner's previous attorney and that the necessary motions had been filed on the petitioner's behalf. The court also found that the defendant had vaguely testified as to the information he had actually given trial counsel regarding the potential witnesses, and that counsel had no means to find them. Additionally, the court stated that it "was the sixth trial setting" and that "the case ha[d] been characterized as a swearing contest between the officers and the defendant that the narcotics were not his . . . ." The court further said, "At any rate, it appears to the Court to be a case of ineffective assistance of the defendant in the trial of his own case." The court ruled that the petitioner had not provided "even a scintilla of proof" that trial counsel's representation had been ineffective and found that trial counsel had not violated any duty owed to the petitioner.

We concur in the post-conviction court's determination that the petitioner failed to show that trial counsel was ineffective. The petitioner has failed to demonstrate that the alleged deficiencies of his trial counsel would have made any difference in the outcome of his trial. We cannot speculate what the petitioner's witnesses might have said at trial that would have made the petitioner's trial defense more credible, for they did not testify at the post-conviction hearing. Although it appears that the petitioner, himself, is largely to blame for the fact that he did not spend more time with trial counsel preparing his trial testimony, he has failed to show that additional preparation would have changed the outcome of the trial. He testified at trial as to his version of the facts, but the jury did not believe him, as evidenced by their verdict. Thus, we cannot conclude that the post-conviction court erred in ruling that the petitioner did not establish that trial counsel was ineffective. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

## CONCLUSION

The record supports the post-conviction court's dismissal of the petition.  Accordingly, the judgment is affirmed.

_____

ALAN E. GLENN, JUDGE