IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 2, 2009

**TONY YOUNG v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-19507; P-21814; P-21815; P-21816     John P. Colton, Jr., Judge**

**No. W2007-00328-CCA-R3-PC  - Filed December 28, 2009**

The Petitioner, Tony Young, appeals the denial of post-conviction relief.  He was originally convicted by a jury of aggravated rape, aggravated sexual battery, especially aggravated kidnapping, and four counts of aggravated assault.  He was sentenced to concurrent terms of twenty-five years for the aggravated rape and especially aggravated kidnapping convictions, concurrent six year terms for each of the four aggravated assault convictions, and twelve years for the aggravated sexual battery conviction.  These several sentences were to be served consecutively to each other for an effective sentence of forty-three years. The petitioner claims he received ineffective assistance of counsel at trial and on appeal.  Upon review, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Magan N. White, Jackson, Tennessee, (on appeal) and Robert Gaia, Memphis, Tennessee, for the Petitioner-Appellant, Tony Young.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; William L. Gibbons, District Attorney General; James Lammey, Jr., and David Zak, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**

        **Facts**.  The facts of the underlying convictions, as outlined by this court in the petitioner's direct appeal, are described as follows:

        The defendant's convictions stem from his involvement in the kidnapping and rape of two women and a subsequent assault on one of the rape victims, her mother, and a passenger in their car.  At trial, one of the victims, Tamicka Chism, testified to the following events.  On December 24, 1995, Ms. Chism went to a telephone booth outside her apartment to make a phone call.  She was accompanied by a young boy whom she was babysitting at the time.  While at the telephone booth,

Ms. Chism was approached by the defendant who held a gun to her head and forced her and the little boy into his car. After dropping off the boy, the defendant took Ms. Chism to a house owned by his mother and over the course of the evening continuously raped and beat her. The next morning, the defendant gave Ms. Chism a choice as to how she would prefer to be killed: he could either shoot her, he could slit her throat, or she could ingest rat poison. Ms. Chism chose the rat poison. After she had ingested two handfuls of the poison, the defendant took her to the bathroom and bathed her. The defendant then partially dressed her, took her back to her neighborhood, and let her out of the car. She managed to crawl to a neighbor's apartment where an ambulance was called. When she arrived at the hospital, she was examined and found to have suffered a severe trauma to her cervix as well as many other superficial abrasions and injuries. Ms. Chism described her attacker as a bald, black male wearing an army outfit and driving a green Volvo with tan interior.

On January 4, 1996, less than two weeks after the rape of Ms. Chism, another victim, Joyce Edwards, showed up at the house of Greta Eason. Ms. Edwards had no clothes on, a large piece of glass protruding from her stomach, a cut in her foot so deep it exposed the bone, blood and foam coming from her mouth, two black eyes, and welts all over her back. According to Ms. Eason and her sister, Ms. Edwards told them she had been kidnapped and raped and beaten by two men, a black man and a white man. She pointed in the direction of the house owned by the defendant's mother and said that was where the rape occurred. Ms. Edwards also told them there was a truck in the yard of the house. She said she had been beaten with a hose and forced to eat rat poison and drink rubbing alcohol. She also said that the black man had told her he was going to kill her and went to a back room to get a gun. At that point, the white man told her she was on her own and she jumped out of a window to escape.

At about the same time that Ms. Edwards arrived at Ms. Eason's house, Ms. Chism was riding in a car with her mother and her mother's friend. As they were driving down the street, Ms. Chism began to recognize the neighborhood. Ms. Chism then realized that this was the neighborhood where she had been raped. She saw the house in which she was raped and, as the defendant walked out of the house in an army outfit, recognized the defendant as her attacker. Although there was conflicting testimony as to what exactly happened next, some sort of chase ensued. This chase ended when the cars collided and the defendant retrieved a sledgehammer from the trunk of his green Volvo and smashed all of the windows out of Ms. Chism's mother's car. The police were called and the defendant was subsequently found in a nearby house.

It appears that as the police responded to the incident occurring between the defendant and Ms. Chism, the police were also responding to a call regarding the rape of Ms. Edwards. Ms. Edwards told the police that she was raped in a neighboring house with a red truck in the front yard. She also told them she had jumped out of the window to escape. The police, relying on the information obtained

from Ms. Edwards, ended up at the house belonging to the defendant's mother located on Edsel Street. There was a red truck in the front yard of the house and a broken window with blood dripping from it on the west side of the house. The police that had responded to the call involving Ms. Chism then took her to the house on Edsel belonging to the defendant's mother, and she identified it as the same house in which she had been raped.

The police went inside the house to look for any other possible victims. Inside, the police found a length of garden hose and an empty box of rat poison in the garbage can outside. The police also apprehended a white male who had been walking on the street in front of the house and who stated that he had been in the house at the time of the rape.

By this time, Ms. Edwards had been transported to the hospital where blood was found in both her anal and vaginal areas. Medical records indicated that she had intoxication secondary to being forced to consume rat poison and rubbing alcohol. In addition, Ms. Edwards was shown a photo line-up in which she identified the defendant as her attacker.

State v. Tony C. Young, No. 02C01-9801-CR-00010, 1998 WL 910192, at **1-2 (Tenn. Crim. App., at Jackson, Dec. 31, 1998).

On February 3, 1998, after filling out several boilerplate forms, the petitioner filed pro-se petitions for post-conviction relief in each of his convictions, alleging, inter alia, that he was denied effective assistance of counsel. In response, the State filed a motion requesting the post-conviction court to appoint counsel because "[t]he petition was so unartfully (sic) drawn that no formal legal response is possible." On November 23, 1999, the post-conviction court appointed counsel; however, no amended petition for post-conviction relief appears in the record before this court. The post-conviction court subsequently held two evidentiary hearings on March 10, 2006, and September 21, 2006.

The March 10, 2006 hearing apparently concerned the petitioner's motion for funds to hire his own DNA expert.[1] An agent with the Tennessee Bureau of Investigation (TBI) testified at the petitioner's request concerning DNA analysis. Pursuant to the court's order, the agent analyzed the panties of Tameka Chism, one of the victims in the petitioner's case. He testified that the petitioner could not be excluded from the DNA profile extracted from her panties. In addition, the agent stated that the DNA test that he performed in reaching his conclusion was not available at the time of the petitioner's trial in 1997 because the technique was not validated until 1999 and 2000. He explained that a different type of DNA testing was available at the time of the petitioner's trial, which "was poor at getting results from degraded samples." The petitioner also testified and was concerned because the forensic scientist who testified at his trial concerning victim Tameka Chism stated that

---

[1] Although not clear from the record, the petitioner apparently filed a previous motion for funds to hire a DNA expert; however, the trial court ordered the TBI to perform the testing and analysis.

"we couldn't do any DNA testing." The petitioner also complained to the post-conviction court that he wanted a new lawyer because he was "not happy" with post-conviction counsel's performance. The post conviction court denied his request. The hearing was continued on petitioner's motion "to bring in proof on the ineffective assistance matters."

Before the September 21, 2006 hearing began, the State moved to dismiss the petition because they contended the DNA analysis confirmed the petitioner's guilt in the attack against Chism. Consequently, the State argued trial counsel could not have provided the petitioner with ineffective assistance of counsel. The post-conviction court allowed the petitioner to continue the hearing. The petitioner testified that he met with trial counsel about three times before trial, during which they discussed the facts of the case and possible defenses. The petitioner and trial counsel agreed that for the charges concerning the victim, Tameka Chism, his defense would be consent. The petitioner told trial counsel that he had a prior relationship with Chism that lasted three to four months. The petitioner said trial counsel questioned Chism about the prior relationship at trial; however, Chism denied knowing the petitioner before the attack. The petitioner acknowledged that trial counsel had witnesses testify that Chism lied about her relationship with the petitioner. Nonetheless, in regard to the case involving Chism, the petitioner's single complaint against trial counsel was that she did not adequately cross-examine Chism. He stated, "I don't think [trial counsel] really put effort in cross-examination of Tameka Chism into detail." The petitioner additionally stated, "All the questions I had wanted to ask she never asked all the questions."

In regard to his case involving victim Joyce Edwards, the petitioner's single complaint against trial counsel was that she did not cross-examine Edwards "based on - - drugs." The petitioner claimed Edwards was on drugs. The petitioner was represented by different counsel on direct appeal. He stated that counsel who handled his direct appeal did not raise any sentencing issues. In regard to his case involving victim Zelda Eudora, the petitioner repeated his complaint that trial counsel failed to cross-examine Eudora. The petitioner additionally testified in general that he received no documents about his case until after the trial. He did not know whether any documents in trial counsel's possession would have been beneficial to his case. The petitioner said that before trial, he did not request any documents from trial counsel. He stated that trial counsel should have given him a copy of the rape crisis reports; however, he conceded that the reports did not help his defense.

The petitioner testified that he rejected two plea offers. The second offer was for a concurrent ten-year sentence. Before rejecting these offers, the petitioner claimed he was unaware of the possible sentences he could receive if convicted at trial. Specifically, he did not know that the trial court could impose consecutive sentencing. On redirect, the petitioner stated the reason he rejected the offer was because, "I wasn't given aggravated rape." After the petitioner's testimony, the defense rested. The State then declined to put on any proof and argued for the trial court to deny the petition. However, the post-conviction court reserved judgment and allowed post-conviction counsel to call trial counsel as a witness.

To the extent that she was questioned by post-conviction counsel, trial counsel testified that she gave the petitioner a copy of everything in her file as soon as she received the documents. She said the petitioner received a plea offer for ten years after the one of the victims, Joyce Edwards, did

not appear at trial. She filed various motions in the petitioner's case including a motion to sever, a motion to dismiss after victim Edwards did not appear, and a motion for a new trial. Trial counsel did not handle the petitioner's direct appeal. Counsel who handled the direct appeal did not testify. Trial counsel was not questioned about whether she discussed sentencing with the petitioner.

Oddly, in closing argument post-conviction counsel stated, "[t]his is not a swearing match between a former client and his attorney, this is a case in which a man received an outstandingly harsh sentence, especially in light of the fact everybody agrees he was offered ten years." By written order, the post-conviction court denied the petition, finding that the petitioner had failed to support his claim by clear and convincing evidence.

## ANALYSIS

**Standard of Review**. Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). Our Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotations and citations omitted). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Id., see also T.C.A. § 40-30-110(f) (2006). Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Vaughn 202 S.W.3d at 116 (citing Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> [T]he right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to 'reasonably effective' assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal citation and quotation omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984) and Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim[, and] a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below an objective standard of "reasonableness under prevailing professional norms." Id. (quoting Strickland, 466 U.S. at 688). Prejudice arising therefrom is demonstrated once the petitioner establishes "a reasonable probability that but for counsel's errors the result of the proceeding would have been different." Id. "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068).

**I. Ineffective Assistance of Counsel**. The petitioner claims he received ineffective assistance of counsel because trial counsel failed to (1) adequately cross-examine the victims in his cases, (2) provide the petitioner with documents during discovery, and (3) discuss possible sentencing. The State contends the trial court correctly denied post-conviction relief. It asserts the petitioner's claim is waived because it was not properly presented to the post-conviction court.

The post-conviction court's order denying post-conviction relief stated, inter alia, the following:

> Blanket allegations of ineffective assistance of counsel such as the one offered by the Petitioner that he did not think [counsel] put effort into cross-examination of Tameka Chism, without addressing specific instances of conduct fail to rise to the level articulated in Strickland v. Washington. The only support Petitioner cites to support his allegation of ineffective assistance of counsel is that [counsel] failed to ask every question on cross-examination that he would have liked. In response to the allegation about the rape crises reports, the Petitioner makes the allegations that he did not receive them prior to trial, thereby insinuating that he did not receive effective counsel, but then agrees with the State on re-cross that the reports did not contain anything of relevance that would have advanced his case. This court will not second guess the investigatory skills of [counsel] especially when a petitioner is unwilling to address specific instances of conduct. . . . The issue is without merit as Petitioner failed to support his claim by clear and convincing evidence.

Nothing in the record preponderates against the post-conviction court's findings of fact. As an initial matter, as the State points out, the petitioner fails to adequately present a factual basis in support of his claims. Ordinarily, this would constitute waiver of this issue. See T.R.A.P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an

error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); <u>see also</u> T.C.A. § 40-30-106(d) (2005) ("The petition must contain a clear and specific statement of all grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings."). Nevertheless, we have reviewed the record and conclude the petitioner has failed to show by clear and convincing evidence that he received ineffective assistance of counsel.

First, the petitioner argues trial counsel's performance was deficient based on her cross-examination of the victims in his cases. However, the petitioner concedes that trial counsel questioned Chism about her relationship with the petitioner, and even called witnesses to rebut Chism's testimony. In regard to the victims in his other cases, the petitioner fails to state how trial counsel's cross-examination of them was deficient or in what way he was prejudiced. Second, the petitioner claims trial counsel should have provided him with documents during discovery. As noted by the post-conviction court, the petitioner provided no explanation for how these documents would have aided his defense; therefore, he failed to show that he was prejudiced by not receiving them before trial. Next, the petitioner argues that trial counsel should have advised him of possible sentencing before he rejected a plea offer. He asserts he would have pled guilty if he had known the trial court could impose consecutive sentencing. This issue has been waived because the record shows that the post-conviction court did not consider it as included in the petition for post-conviction relief. Moreover, post-conviction counsel did not question trial counsel about whether she discussed sentencing with the petitioner. Based on the petitioner's bare allegations, he has not met his burden of proving deficient performance or prejudice. Accordingly, he is not entitled to relief.

Finally, the petitioner's brief devotes significant discussion to whether counsel on direct appeal was ineffective. The State argues that this issue is waived because it was not included in the petition for post conviction relief; and consequently, not considered by the post-conviction court. The petitioner insists the issue was properly before the post-conviction court based on his testimony that appellate counsel did not raise any sentencing issues on appeal. We agree with the State. Based on the record, the post-conviction court did not consider whether counsel on direct appeal was effective. Additionally, appellate counsel did not testify at the post-conviction hearing, and the only evidence presented was that, according to the petitioner, appellate counsel did not challenge sentencing on appeal. We conclude, based on the authority previously discussed, that this issue has been waived.

**CONCLUSION**

Upon review, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN,
JUDGE

-7-