IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 10, 2012

## LEON FLANNEL v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 03-07354     Paula Skahan, Judge**

**No. W2011-00942-CCA-MR3-PC  - Filed August 1, 2012**

The petitioner, Leon Flannel, appeals the denial of his petition for post-conviction relief. The petitioner was convicted by a jury of one count of murder in the perpetration of a theft and one count of premeditated murder; the convictions were merged, and the petitioner was sentenced to imprisonment for life. After the denial of his direct appeal, the petitioner filed a petition for post-conviction relief, asserting ineffective assistance of counsel. Specifically, the petitioner urges that, because he expressed his dissatisfaction with his trial counsel prior to trial, his trial counsel should have withdrawn. The trial court found no deficiency in the petitioner's trial counsel's performance and no resulting prejudice. After a thorough review of the petitioner's claim, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and JEFFREY S. BIVINS, JJ., joined.

Patrick E. Stegall, Memphis, Tennessee, for the appellant, Leon Flannel.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Doug Carriker, Assistant Attorney General, for the appellee, State of Tennessee.

### OPINION

The petitioner's convictions for murder in the perpetration of a theft and premeditated murder arose from the killing of David Cooper. The petitioner and victim met while the

petitioner was recovering from a head injury in the facility where the victim was employed as a nurse. Tammie Robinson, the victim's close friend, testified that the victim was homosexual and had previously found sexual partners among men he met through his job. At the time of his arrest, the petitioner made a statement to police that he was at the victim's house drinking beer and that the victim made a sexual advance toward him. The petitioner's statement recounted that after the victim made a sexual advance, the petitioner asked to see the victim's gun, which had been sitting on the dresser. The petitioner proceeded to shoot the victim several times, and then he took the victim's keys and cell phone. The petitioner stated that he intended to steal the victim's car but was unable to open it. He threw the victim's keys and cell phone away after making calls to his girlfriend, his cousin, and his brother.

The petitioner's former girlfriend, Keeiyona Hill, testified that the petitioner called her from the victim's cell phone, upset that the victim had made advances toward him. According to Ms. Hill, however, the petitioner told her that he had pretended to be asleep, waited until the victim fell asleep, and then found the victim's gun. The petitioner told her he intended to kill the victim and steal his car. This version of events was also corroborated by a letter purportedly written by the petitioner from prison, in which he requested the recipient to kill his girlfriend because she had talked to the police about the crime. In the letter, the petitioner wrote that the victim fell asleep, he found the victim's gun, and he woke the victim and robbed him before calling his girlfriend to tell her he was about to kill the victim. This letter was entered into evidence, along with expert testimony identifying the handwriting as the petitioner's. The petitioner did not testify at trial, but Dr. Fred Steinberg, a forensic psychologist, testified on his behalf. Dr. Steinberg testified regarding the petitioner's low IQ, poor judgment, impulsive behavior, short attention span, tendency to favor simple solutions, and third-grade level of reading comprehension. Dr. Steinberg acknowledged that the letter differed in important respects from the information given to him by the petitioner and did not suggest impulsive behavior. Dr. Steinberg opined that this difference could be explained by the fact that the petitioner (who was in jail at the time) wanted to seem "macho." *State v. Flannel*, No. W2007-00678-CCA-R3-CD, 2008 WL 4613829 (Tenn. Crim. App. Oct. 13, 2008). The petitioner was convicted of murder in the perpetration of a theft and premeditated murder, and the convictions were merged.

The petitioner appealed his convictions on numerous grounds, and this Court affirmed the judgments. *State v. Flannel*, 2008 WL 4613829, at *1. The petitioner filed a *pro se* petition for post-conviction relief on May 18, 2009, asserting ineffective assistance of counsel. Specifically, the petitioner asserted that his trial counsel was ineffective in failing to investigate the case, failing to file an application for review of sentence by a three-judge panel, and failing to file a motion for modification or reconsideration of his sentence. The petitioner was appointed counsel, and post-conviction counsel raised the additional claim that

the petitioner's trial counsel had been ineffective by virtue of failing to withdraw after the petitioner expressed dissatisfaction with his representation.

At the post-conviction hearing, the petitioner raised numerous points of dissatisfaction with his counsel's performance. The petitioner testified that he had been dissatisfied with trial counsel's representation because his counsel had not provided him with certain discovery, including an affidavit of complaint and the statement given by the victim's friend, Tammie Robinson. The petitioner objected to the fact that his trial counsel had allowed his co-counsel to advise the petitioner to accept a plea offer (of life imprisonment, made during a time when the prosecution was seeking the death penalty). The petitioner complained both that trial counsel had tried to force him to take the stand to testify against himself and that trial counsel had advised him against testifying at trial, resulting in a missed opportunity to present his story. The petitioner asserted that his trial counsel was deficient for showing the letter soliciting Ms. Hill's murder to his expert witness, Dr. Steinberg, as the doctor was preparing to testify on the petitioner's behalf. The petitioner further complained that his lawyer (1) did not meet with him frequently enough; (2) advised him not to give a sample of his handwriting; (3) refused to file certain motions, including a motion to dismiss based on delay in bringing the petitioner to trial; (4) failed to adequately investigate his case; (5) failed to subpoena certain witnesses; and (6) allowed crime scene photos that were not in evidence to be taken into jury deliberations.

Many of the petitioner's complaints were memorialized in four letters that the petitioner wrote prior to trial, two to the Board of Professional Responsibility and two to trial counsel. In his letters to the Board of Professional Responsibility, the petitioner stated his belief that his trial counsel's assistance was ineffective, that he was "fed up" with trial counsel's representation, and inquired as to how to go about "getting rid[]" of his trial counsel. In his letters to trial counsel, the petitioner wrote that he was not satisfied with trial counsel's representation and that he intended to contact the Board of Professional Responsibility. He also complained that a state mental health professional who evaluated him was a co-worker of the victim.

The Board of Professional Responsibility wrote the petitioner to inform him that the trial court had the authority to remove his attorney from his case. However, at the post-conviction hearing, the petitioner acknowledged that, prior to trial, his trial counsel had convinced him that he had been working hard and had the petitioner's best interests in mind. Ultimately, the petitioner told the court that he wished to keep his attorney. The petitioner further acknowledged that, relying on trial counsel's advice, he was the one who had made the decision not to testify at trial.

Trial counsel's testimony at the petitioner's post-conviction hearing addressed some

of the petitioner's complaints. Trial counsel testified that during his interviews with potential witnesses, it became apparent that the witnesses that the petitioner wanted to subpoena would testify that the victim chose "thugs and criminals and people who were violent" as partners; trial counsel elected not to subpoena them so that this damaging testimony would not be admitted. He further noted that he did elicit testimony from one witness regarding the victim finding sexual partners through his job. Trial counsel testified that, after attempting to exclude the letter soliciting Ms. Hill's murder, he advised the petitioner that it would be to his benefit to give a handwriting sample if he had not written the letter, but that it would be a critical piece of evidence against him if he had written it; trial counsel further advised the petitioner that refusal to give the sample would delay the trial. The petitioner refused to give a sample. Trial counsel did not file a motion to dismiss based on delay because he felt the claim was waived based on the petitioner's refusal to give a handwriting sample. Trial counsel testified that the decision not to testify was the petitioner's and that the petitioner had not been pressured to plead guilty to a life sentence. He further testified that he showed Dr. Steinberg the letter soliciting Ms. Hill's murder in order to prevent him from being surprised by it while on the stand during the trial. Trial counsel testified he met with the petitioner numerous times and also spoke with him on the telephone. He testified that, when the petitioner told him that he was dissatisfied with his representation, he offered the petitioner the opportunity to express his concerns to the judge; ultimately, however, the petitioner changed his mind and was satisfied with his representation. Trial counsel testified that he did not have trouble communicating with the petitioner in order to prepare for trial.

The post-conviction court denied relief, finding that counsel rendered effective assistance and that the petitioner failed to show any prejudice. On appeal, the petitioner's sole assignment of error is that the post-conviction petition should have been granted on the grounds that trial counsel was deficient in failing to make a motion to withdraw after being apprised of the petitioner's dissatisfaction with his representation.

The Sixth Amendment to the United States Constitution and article 1, section 9 of the Tennessee Constitution guarantee the accused the right to counsel. The right to counsel is the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim that a conviction should be reversed due to ineffective assistance of counsel, the petitioner must show both deficient performance on the part of counsel and prejudice to the petitioner. *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). In assessing deficiency, the proper standard for attorney performance is reasonably effective assistance, meaning that counsel's performance falls "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 687, 689. To prevail, "the petitioner must show that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369. The attorney's errors must be so serious that counsel was not functioning as the counsel

guaranteed under the Sixth Amendment. *Strickland*, 466 U.S. at 687. Judicial scrutiny of counsel's performance must be highly deferential, allowing for the "wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 689.

In showing that any deficiency in performance resulted in prejudice, the defendant must demonstrate that counsel's errors were so serious as to deprive the defendant of a fair trial. *Strickland*, 466 U.S. at 687. While the defendant need not show that the deficiency more likely than not altered the outcome of the trial, it is necessary to demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. *Strickland*, 466 U.S. at 693-94. Failure to prove either deficiency or prejudice will result in the denial of a claim, and the court need not address both prongs. *Goad*, 938 S.W.2d at 370.

The petitioner bears the burden of proving the allegations of fact in a post-conviction petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2012). Clear and convincing evidence leaves no serious or substantial doubt about the correctness of conclusions drawn from the evidence. *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009). The factual findings of the post-conviction court are binding on the appellate court unless the evidence preponderates against them. *Dellinger v. State*, 279 S.W.3d 282, 295 (Tenn. 2009). Questions of law and mixed questions of law and fact are reviewed de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011). On review, a claim of ineffective assistance of counsel is a mixed question of law and fact. *Grindstaff*, 297 S.W.3d at 216.

Tennessee Code Annotated section 40-14-205(a) allows the trial court, "upon good cause shown, [to] permit an attorney appointed under this part to withdraw as counsel of record for the accused." The court may also replace an attorney on its own motion "if the court deems replacement of the attorney necessary to preserve the rights of the accused." T.C.A. § 40-14-205(b). Tennessee Supreme Court Rule 8, Rules of Professional Conduct 1.16, delineates the circumstances in which an attorney may or must withdraw from representing a client. Withdrawal is mandatory if "(1) the representation will result in a violation of the Rules of Professional Conduct or other law; (2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or (3) the lawyer is discharged." Appointed counsel for an indigent defendant "shall continue to represent an indigent party throughout the proceedings, including any appeals, until the case has been concluded or counsel has been allowed to withdraw by a court." Tenn. Sup. Ct. R. 13 § 1(e)(5).

The petitioner, by his own testimony, did not discharge trial counsel but told both the trial court and his trial counsel that he wished to continue to trial represented by his attorney.

Nor was there any evidence that his trial counsel should have withdrawn for any other reason under Tennessee Supreme Court Rule 8, Rules of Professional Conduct 1.16. *See State v. Branam*, 855 S.W.2d 563, 566 (Tenn. 1993) (holding that, absent grounds for mandatory or permissive withdrawal, the trial court did not abuse its discretion in declining to allow counsel to withdraw). The petitioner has failed to demonstrate by clear and convincing evidence that his trial counsel was ineffective for failing to move to withdraw from representation. Furthermore, there was no proof presented at the post-conviction hearing that would establish a reasonable probability of a different outcome had the petitioner's trial counsel withdrawn. Trial counsel's testimony that he had no difficulty communicating with the petitioner in preparation for trial was not challenged, and the evidence adduced at trial establishing the petitioner's guilt was overwhelming.

The petitioner's other bases for claiming ineffective assistance of counsel were not raised in his appellate brief and are therefore waived. Tenn. Rule Crim. App. 10(b). There appears to be no proper basis for excusing the defendant's waiver, for it is clear from the record that these claims were also not meritorious. Many of the alleged errors – such as trial counsel's purported failure to provide discovery and trial counsel's actions regarding the photographs – are not supported by evidence. Others, such as trial counsel's alleged advice to accept a plea offer or trial counsel's alleged coercion to testify, plainly were not prejudicial. Still others, such as counsel's decision not to subpoena witnesses, advice not to testify, and decision to show the letter to Dr. Steinberg, were quintessential tactical decisions toward which a reviewing court shows high deference. We do not believe they amount to deficient representation on this record. *Strickland*, 466 U.S. at 689.

## CONCLUSION

Based on the foregoing, we conclude that the post-conviction court did not err when it found that the petitioner had shown neither deficient performance nor any resulting prejudice. The judgment of the post-conviction court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE