IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

**FOR PUBLICATION**

|  |  |  |
|---|---|---|
| WILLIAM WESLEY GOAD, | ) | **Filed: December 2, 1996** |
|  | ) |  |
| Appellant, | ) |  |
|  | ) | SUMNER CRIMINAL |
|  | ) |  |
| Vs. | ) |  |
|  | ) | HON. FRED A. KELLY, III, |
|  | ) | JUDGE |
| STATE OF TENNESSEE, | ) |  |
|  | ) |  |
| Appellee. | ) | No.  01-S-01-9509-CR-00169 |

**For Appellant:**

Paul J. Morrow, Jr.
Nashville, Tennessee

Louis W. Oliver, III
Hendersonville, Tennessee

**For Appellee:**

Charles W. Burson
Attorney General and Reporter

John P. Cauley
Assistant Attorney General
Nashville, Tennessee

Lawrence Ray Whitley
District Attorney General
Gallatin, Tennessee

**FILED**

December 2, 1996

Cecil W. Crowson
Appellate Court Clerk

# O P I N I O N

REVERSED AND REMANDED.                              ANDERSON, J.

The primary issue in this appeal is whether the petitioner, William Wesley Goad, was afforded his constitutional right to effective assistance of counsel at the sentencing phase of his capital trial.

The Tennessee death penalty statute, Tenn. Code Ann. § 39-2-203, requires at the sentencing phase of a capital trial that the jury weigh statutory aggravating circumstances against statutory and other mitigating circumstances. If the mitigating circumstances do not outweigh the aggravating circumstances[1], the jury must return the death penalty.

In this case, the State relied on and proved one aggravating circumstance, Tenn. Code Ann. § 39-2-203(i)(2)(1982), conviction of one or more felonies involving violence or the threat of violence. The defense mitigation theory at sentencing was that Goad's experience in Vietnam had drastically changed him from a model citizen to a violent, mentally ill criminal. The only proof, however, that was introduced to support this marked change was that of Goad's parents and two high school friends. The record establishes that trial counsel failed to produce an available expert witness to introduce proof that Goad had been diagnosed with a mental illness -- post-traumatic stress disorder

---

[1] The statute has now been amended to say:

> (g)(1) If the jury unanimously determines that:
>
> (A) At least one (1) statutory aggravating circumstance or several statutory aggravating circumstances have been proven by the state beyond a reasonable doubt; and
>
> (B) Such circumstance or circumstances have been proven by the state to outweigh any mitigating circumstances beyond a reasonable doubt;
>
> then the sentence shall be death.

Tenn. Code Ann. § 39-13-204(g)(1) (1996).

-- arising out of his harrowing Vietnam military service experience and his wife's infidelity while he served there.

Under these circumstances, the standards for effective assistance of counsel required in the United States Supreme Court case of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), apply. We conclude that defense counsel was ineffective in failing to present the available expert mitigating evidence of mental illness which would have substantially strengthened the mitigation case of the defense. That ineffectiveness undermines our confidence in the outcome of the penalty proceeding. As a result, there is a reasonable probability that the result of the sentencing hearing would have been different but for counsel's ineffectiveness. We reverse the Court of Criminal Appeals' judgment denying post-conviction relief, vacate the petitioner's death sentence, and remand the case to the trial court for a new sentencing hearing.

## BACKGROUND

### A.   Sentencing Hearing

The petitioner was convicted of first-degree murder in the perpetration of a robbery and sentenced to death by electrocution. <u>See</u> <u>State v. Goad</u>, 707 S.W.2d 846 (Tenn. 1986). The only aggravating circumstance found by the jury was that in Tenn. Code Ann. § 39-2-203(i)(2)(1982), "the defendant was previously convicted of one or more felonies, other than the present charge, which involved the use or threat of violence to the person." The proof presented at the sentencing hearing at trial was summarized by this Court in its opinion on direct appeal.

Appellant was about 35 years of age at the time of the trial. He had been reared in Maury County, Tennessee, and had entered military service shortly after his graduation from high school in Mount Pleasant. He served for about two years in the armed services, one portion being in Europe and the other in Vietnam. After his return from service he had been married three times. He was shown to have been subject to drug abuse to some extent, had been convicted of six major felonies and had been incarcerated for some time as a result of these convictions. He had no history of mental illness or of treatment for drug abuse. He was evaluated prior to trial at a state mental health facility and found to be competent to stand trial. No plea of insanity was interposed, nor was there any specific claim of diminished mental capacity. At the sentencing hearing, however, it was contended that his personality had "changed" since his return from military service, and apparently his career of crime and poor citizenship was attributed to his military experiences.

Goad, 707 S.W.2d at 848.

As the summary reflects, the defense attempted to establish at the sentencing hearing that Goad had been a model citizen until he served in Vietnam. Goad's parents testified that Goad had a "typical" childhood. He made good grades, attended church, and graduated from high school. Shortly after his graduation in 1967, Goad enlisted in the U.S. Army and eventually served in Vietnam. Goad's parents related the drastic changes they noticed in Goad's behavior upon his return home from Vietnam. He was "altogether different," acted "nervous," and appeared to be involved with drugs. Similarly, two of Goad's high school friends testified that Goad was a passive, non-violent person while in high school.

During the sentencing hearing, petitioner's counsel requested that the court adjourn early at 5:45 p.m. one day so that Dr. Oakley Ray of the Veterans Administration Mental Health Section could testify the next morning. Counsel

-4-

said that Dr. Ray had been out of town for two weeks and would be available the next day. The State requested an offer of proof. In response, defense counsel stated that Dr. Ray had "spent some time" with the petitioner, was "an expert in the field of post-traumatic stress syndrome," and would testify about how Goad's experiences in Vietnam had affected his mental health. The trial court denied the request for an early adjournment, stating that it "wouldn't allow that testimony at the sentence hearing." Id. at 852. The sentencing hearing proceeded, and the jury returned a verdict of death.

## B. Direct Appeal

On direct appeal, Justice Harbison of this Court found fault with counsel's failure to present a more detailed offer of proof and with the trial court's premature refusal to admit Ray's testimony in his opinion. This Court, however, declined to order a new sentencing hearing without further development of the record. Accordingly, the case was remanded by this Court for a trial court hearing in which defense counsel were to be given an opportunity to establish that they had contacted Dr. Ray and arranged for his appearance at the sentencing hearing. If counsel could not so demonstrate, then the sentence would not be disturbed; if counsel could establish Dr. Ray's availability, then his testimony was to be presented. If Dr. Ray's testimony "credibly tend[ed] to establish that [petitioner] suffered from post-traumatic stress syndrome in February 1983," then the death sentence was to be vacated and a new sentencing hearing held. Id. at 854.

## C. Trial Court Remand Hearing

At the trial court remand hearing, one of the petitioner's attorneys, John Pellegrin, submitted affidavits detailing his contacts with Dr. Ray prior to trial and his effort to obtain Dr. Ray's testimony for the sentencing hearing. Pellegrin maintained that it was his understanding that Ray would be available to testify at the sentencing hearing about Goad's post-traumatic stress symptoms. Pellegrin also asserted that he had learned after trial for the first time that Goad had actually been evaluated by Dr. Sam Pieper, Jr., acting chief of the Veterans Administration Psychiatric Service, and not Dr. Ray, and that Pieper had completed an evaluation report on November 22, 1983, several months before trial.

Neither Pieper nor Ray were subpoenaed by the defense to testify at the remand hearing, nor was Pieper's report introduced into evidence. Ray, however, told an investigator for the District Attorney General and one of the petitioner's attorneys that he had never been contacted about testifying in Goad's case, that he was not an expert in the area of post-traumatic stress syndrome, and that he had never examined the petitioner. Based on that proof, the trial court concluded that trial counsel "were not actually prepared to offer the testimony of Dr. Ray and that Dr. Ray was not prepared to testify that the defendant suffered from post-traumatic stress syndrome." This Court affirmed the trial court's refusal to grant a new sentencing hearing.

## D. Post-Conviction Action

Thereafter, Goad filed this post-conviction action in 1987[2], alleging numerous grounds for relief. He asserted that he had been denied the effective assistance of counsel at the sentencing phase of his trial due to counsel's failures to introduce mitigation evidence about his post-traumatic stress disorder, his prior drug abuse and treatment, and his prior head injury. A post-conviction evidentiary hearing was held in 1993.

Both of Goad's trial attorneys, John Pellegrin and John Wesley Jones, testified at the post-conviction hearing. Pellegrin said that he had been licensed to practice law in October of 1980, a little more than three years before his appointment to this case. Although he had tried "numerous" criminal cases, this was his first death penalty case. Jones testified that he began to practice law in 1971. He had tried approximately twelve first-degree murder cases, but, like Pellegrin, this was his first capital case.

Pellegrin testified that he learned of Dr. Ray prior to trial from the Public Defender's Office in Davidson County, which was representing Goad on separate charges. After speaking with Ray, Pellegrin discussed the evaluation by the Veterans Administration with Goad, and he reviewed materials on post-traumatic stress syndrome that he had received at a death penalty seminar. Pellegrin, however, did not subpoena Dr. Ray and did nothing else to assure Ray's attendance at trial.

---

[2] There is no explanation in the record for the long delay before the post-conviction hearing and no apparent effort by the trial court, the State, or the defense to expedite the hearing. As a result of similar and other problems, this Court appointed a Post-Conviction Study Commission in 1991 which recommended to the Legislature reforms in the post-conviction process. As an outgrowth of this report, legislation was adopted which treats the issue of promptness in hearing post-conviction petitions. In addition, since 1993, in capital cases, this Court requires monthly progress reports from the trial courts.

Shortly before trial, Pellegrin once again called Ray's office only to discover that the doctor was out of town for two weeks and would not return until the time the sentencing hearing began. Again, no subpoena was issued. At the beginning of the sentencing hearing, Pellegrin spoke with Dr. Ray for a third time. Ray, however, informed Pellegrin that he was very busy and "couldn't make it" to court. When Pellegrin asked if Ray could make an offer of proof "maybe the next day," Ray replied that he could not.[3] According to Pellegrin, it was only after trial that he discovered that Dr. Ray was not the person who had evaluated the petitioner.[4] Likewise, it was after trial that Pellegrin said he received a copy of a report that had been prepared on November 22, 1983, by Dr. Pieper. Pellegrin conceded that he never subpoenaed Ray for the sentencing hearing.

Co-counsel Jones testified that the defense had received a copy of Dr. Pieper's evaluation before trial, but said he did not attempt to speak with Dr. Pieper because Pellegrin was responsible for the sentencing portion of the trial.[5] Jones testified that the defense had intended to call Dr. Ray as a witness at the sentencing hearing to testify about the results of the evaluation, and had planned to introduce the evaluation as a business record through Dr. Ray's testimony, since they believed he was the supervising psychiatrist. Jones conceded that the defense did not subpoena Ray for the trial. After the trial court summarily ruled Dr. Ray's testimony inadmissible, the defense did not attempt to call any other witness to testify about post-traumatic stress disorder.

---

[3] As noted, counsel had asserted during the remand hearing that he believed Ray would be at the sentencing hearing. Although the post-conviction court did not resolve this apparent conflict in the testimony, it is not material to our disposition of the case.

[4] It was also after trial that the petitioner informed counsel that he would receive disability compensation as a result of the post-traumatic stress disorder.

[5] As noted, Pellegrin testified that he did not know of Pieper's report until after the trial. The post-conviction court made no findings with regard to the apparent conflict in testimony as to when counsel learned that Pieper had conducted the evaluation of Goad.

In addition, both Pellegrin and Jones admitted that they did not issue a subpoena for either Ray or Pieper to testify at the hearing on remand. Pellegrin explained that he did not issue a subpoena on remand because Dr. Ray "simply did not recall talking" with him, and that he did not have Dr. Pieper subpoenaed for the remand hearing because he believed "the issue was more narrowly defined on remand."

Dr. Sam Pieper's report detailing his evaluation of Goad, which apparently was conducted to establish a service-related disability for the Veterans Administration, was introduced at the post-conviction hearing. It recounted several traumatic episodes related by the petitioner:

> He reports several combat incidents which were stressful to him. He and his company had to do "night patrol" about once every three months which meant going outside their perimeter and standing night watch every night for a week. They came under fire several times. He participated in several "fire fights" during the day when his outfit would be attacked while stringing telephone lines. Two incidents stand out. One day an enemy bullet hit his spike causing him to fall from [a] pole. He refused to climb again. Instead, a friend climbed the pole [and] was hit by a bullet. His friend reached out for a wire, caught a high voltage wire and was burned "in a puff of smoke." He came off the pole "like a kite flying into the ground. His fingers were left burned onto the wire." In another fire fight he and his buddies were pinned down for 15-20 minutes by enemy fire. He heard a rifle shot, thought he felt mud being splattered on his face. When the fighting was over he discovered his friend had been shot through the head and it was his buddy's brains he had on his face.
>
> . . . .
>
> Mr. Goad and his first wife began going together in the 9th grade in high school and continued to go together while he was stationed in Germany. On his leave between posts in Germany and Viet Nam he returned home and was married. After he had been in Viet Nam about two or three months he received a letter from his mother saying that his wife had "moved out" and was "running around with

another man." This made Mr. Goad very angry. He began to have an affair with a Vietnamese girl. One night when he was at her home they suddenly got word that the Viet Cong was coming. He hid in a small cellar under the kitchen table. The Viet Cong came in and questioned his girlfriend and her mother. They laid his girlfriend's mother on the kitchen table and tortured her, killing her by eviscerating her. They then lay his girlfriend on the table and eviscerated her. He was very frightened and felt very helpless. Although there was an escape route from the cellar via a tunnel he was afraid to use it.

The report, which Jones described as a "two-edged sword," also contained potentially prejudicial information about the petitioner, such as his pride in using drugs, his frequenting prostitutes, and his violent reaction to his wife's infidelity. Nonetheless, it concluded with Dr. Pieper's impressions:

This veteran does exhibit the symptoms of post-traumatic stress disorder. While some of the precipitating stress does appear to be combat related, by far the most striking and stressful events relate to his behavior in response to his wife's reported infidelity.

He exhibits some characteristics of antisocial personality disorder, of avoidant personality disorder, and borderline personality disorder but does not clearly meet the criteria for any one personality disorder, so the diagnosis of Mixed Personality Disorder is made.

He is considered to be competent for VA purposes.

Dr. Robert Begtrup, a psychiatrist, also testified at the post-conviction hearing. He related his experience and his familiarity with post-traumatic stress symptoms. Although he never personally evaluated or tested Goad, Begtrup reviewed Pieper's report and concluded that it contained "catastrophic events." Begtrup said that nothing in the report contradicted a diagnosis of post-traumatic stress disorder, but that independent verification of the events would be helpful.

-10-

As noted, Goad also claimed that his counsel were ineffective because they failed to investigate his drug abuse, his participation in a substance abuse treatment program while at DeBerry Correctional Institute, and his prior head injury. Pellegrin and Jones testified that they had not sought to obtain records about Goad's prison experience because "it couldn't have curried much favor with the jury." Counsel admitted that they did not request Goad's medical records, and that they were unaware of a gunshot wound he had received about thirteen years before trial. A review of the medical records established that the shotgun wound to the left side of Goad's head did not penetrate his skull. The wound, which was sustained in 1971, required only outpatient treatment.

After considering the evidence, the trial court found that trial counsel's performance was neither deficient nor prejudicial and denied Goad's petition for post-conviction relief. The Court of Criminal Appeals affirmed. We granted Goad a limited[6] appeal to consider whether the evidence preponderates against the lower courts' findings. For the reasons articulated below, we reverse.

---

[6] We also granted the petitioner an appeal on the question of whether he was denied his right to a meaningful appellate review because this Court, in conducting its proportionality review on direct appeal, considered an aggravating circumstance that was not found by the jury. Because we conclude that the petitioner is entitled to a new sentencing hearing, it is not necessary that we address this issue.

## INEFFECTIVE ASSISTANCE OF COUNSEL

We review this claim of ineffective assistance of counsel at a capital sentencing trial under the familiar standards of Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975) and Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994); Butler v. State 789 S.W.2d 898, 899 (Tenn. 1990).

Under Baxter, counsel is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases. Id., 523 S.W.2d at 936; see also Campbell v. State, 904 S.W.2d 594, 596 (Tenn. 1995). In this regard, the Court in Baxter said:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence.... Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interests, undeflected by conflicting considerations.... <u>Defense counsel must investigate all apparently substantial defenses available to the defendant and must assert them in a proper and timely manner.</u>

Baxter, 523 S.W.2d at 936 (quoting, Beasley v. United States, 491 F.2d 687 (6th Cir. 1974)(emphasis added)). To prove a deficiency, therefore, the petitioner must show that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 688, 104 S.Ct. at 2065; Baxter, 523 S.W.2d at 936.

In reviewing counsel's conduct under the facts and circumstances of a case, a "fair assessment ... requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S.Ct. at 2065; see also Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982) (counsel's conduct will not be measured by "20-20 hindsight"). The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. Hellard, 629 S.W.2d at 9; Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Courts are "particularly cautious in preserving a defendant's right to counsel at a capital sentencing hearing." Deutscher v. Whitley, 884 F.2d 1152, 1160 (9th Cir. 1989); Cooper v. State, 847 S.W.2d at 529. The Eighth and Fourteenth Amendments to the United States Constitution mandate that a death sentence be based on a "particularized consideration of relevant aspects of the character and record of each ... defendant." Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 2991, 49 L.Ed. 2d 944 (1976). In this respect, "evidence about the defendant's background and character is relevant because of the belief ... that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems may be less culpable than defendants who have no such excuse." California v. Brown, 479 U.S. 538, 107 S.Ct. 837, 841, 93 L.Ed.2d 934 (1987). Thus, although there is no requirement that defense counsel present mitigating evidence in the penalty phase of a capital trial, counsel's duty to investigate and prepare for a capital trial encompasses both the guilt and sentencing phases. State v. Melson, 772 S.W.2d 417, 421 (Tenn. 1989); see Bertolotti v. Dugger, 883 F.2d 1503, 1516

(11th Cir. 1989)("greater duty of inquiry into a client's mental health imposed for the penalty phase of a trial."); Kubat v. Thieret, 867 F.2d 351, 369 (7th Cir. 1991), cert. denied sub nom., Kubat v. Greer, 493 U.S. 874, 110 S.Ct. 206, 107 L.Ed.2d 159 (1989)("counsel may not treat the sentencing phase as nothing more than a mere postscript to the trial.").

To establish that a deficiency resulted in prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. When challenging a death sentence, a petitioner must show that "there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Strickland, 466 U.S. at 695, 104 S.Ct. at 2069.

Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component. Strickland, 466 U.S. at 697, 104 S.Ct. at 2069.

Applying the foregoing standards, we conclude that the evidence in the record preponderates against the lower courts' findings that petitioner was afforded effective assistance of counsel. The evidence shows that counsel failed to adequately investigate and explore mitigating evidence relative to the Veteran Administration's evaluation of Goad and his symptoms of post-traumatic stress

-14-

disorder.  Counsel were aware that the evidence existed prior to trial, and they intended to call Dr. Ray during the sentencing phase.   Pellegrin spoke with Ray before and during the sentencing hearing.  Although Pellegrin, the least experienced of the two, had primary responsibility for the sentencing hearing, Jones testified at the post-conviction hearing that they planned to admit Pieper's report at sentencing through Dr. Ray's testimony as a business record, even though it was a "two-edged sword."  Neither Pellegrin nor Jones, however, issued a subpoena for Ray.  Moreover, counsel's failure to adequately investigate and prepare this area of mitigation resulted in the failure to locate or subpoena Dr. Pieper, the author of the report.  Consequently, the jury heard no expert proof about Goad's symptoms of post-traumatic stress disorder, and counsel were not prepared to make an offer of proof when the trial court summarily and incorrectly ruled the evidence of post-traumatic stress disorder inadmissible at sentencing.

The errors were compounded when counsel failed to issue subpoenas for Dr. Pieper and Dr. Ray to testify at the trial court remand hearing ordered by this Court after the first appeal.  Pellegrin said that "by the time we got the remand, [Dr. Ray] simply said he was not willing to testify and didn't recall talking to me and those kinds of things."  As to counsel's failure to call Dr. Pieper, Pellegrin said, "I didn't have Dr. Pieper there.  I think at that time I did know Dr. Pieper's work with Mr. Goad and did have some of his records.  But as I said before, we didn't have him there to make an offer of proof because it was my understanding the issue was more narrowly defined on remand than what we could come up with."

Although trial counsel's admitted and stated theory of defense at the sentencing hearing was to establish that Goad's Vietnam experiences had

-15-

drastically changed his character and behavior, they failed to subpoena objective expert witnesses to testify on the issue, both at trial and at the remand hearing. Contrary to the State's assertion, it is clear from counsel's testimony that their failure to subpoena those witnesses was not a tactical decision; it was a mistake - a grievous error. Moreover, counsel's decision before the remand hearing to forego issuing a subpoena for either Dr. Ray or Dr. Pieper and presenting their testimony as an offer of proof cannot be characterized as reasonable or effective. On the contrary, it is unreasonable and ineffective. At that point in the proceedings, the defense had everything to gain and nothing to lose by attempting to present these witnesses. Indeed, the potential benefit was a new sentencing hearing.

Accordingly, we conclude that counsel's failure to investigate, explore, and prepare this mitigating evidence and to subpoena Dr. Ray and Dr. Pieper in an effort to introduce expert proof of post-traumatic stress disorder was not "the result of reasonable professional judgment" and "fell outside the wide range of professionally competent assistance." Accordingly, petitioner has established that counsel's performance, as it related to the presentation of evidence of post-traumatic stress syndrome, was deficient under the standards of Strickland.

## PREJUDICE

Having so concluded, we must next determine whether the petitioner has proven there is a reasonable probability that, absent the error, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. In evaluating whether a petitioner has discharged the burden of establishing prejudice, a court

> must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the

-16-

errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. . . .

Strickland, 466 U.S. at 696-97, 104 S.Ct. at 2069 (emphasis added).

Where the alleged prejudice under Strickland involves counsel's failure to present mitigating evidence in the penalty phase of a capital trial, several factors are significant. First, courts have analyzed the nature and extent of the mitigating evidence that was available but not presented. Deutscher v. Whitley, 946 F.2d 1443 (9th Cir. 1991); Stephens v. Kemp, 846 F.2d 642 (11th Cir. 1988); Cooper v. State, 847 S.W.2d at 532; Atkins v. State, 911 S.W.2d 334 (Tenn. Crim. App. 1995). Second, courts have considered whether substantially similar mitigating evidence was presented to the jury in either the guilt or penalty phase of the proceedings. Atkins v. Singletary, 965 F.2d 952 (11th Cir. 1992); Clozza v. Murray, 913 F.2d 1092 (4th Cir. 1990); State v. Melson, 772 S.W.2d 417, 421 (Tenn. 1989). Finally, the courts have considered whether there was such strong evidence of aggravating factors that the mitigating evidence would not have affected the jury's determination. Fitzgerald v. Thompson, 943 F.2d 463, 470 (4th Cir. 1991); Elledge v. Dugger, 823 F.2d 1439 (11th Cir. 1987). Applying these factors to the evidence in this case, we conclude that counsel's deficiencies were prejudicial under Strickland.

The defense presented lay testimony that, prior to his tour of duty in Vietnam in 1969, the petitioner had been an intelligent, normal and well-behaved young man. In 1970, he returned from Vietnam with an addiction to drugs and a changed personality, and his troubles with the law began soon afterward. The testimony of relatives and friends, particularly that of Goad's parents, supported

-17-

the defense theory that Goad's experiences in Vietnam "changed" him for the worse.

The testimony, however, left open the question of exactly what transpired in Vietnam and how the events affected Goad. The objective, expert proof that was available to the defense but not produced, potentially addressed these questions and supplied a psychological cause and effect between Vietnam and Goad's later behavior. In Stephens v. Kemp, supra, a federal habeas corpus petitioner claimed that defense counsel had been ineffective for failing to present expert testimony relating to his history of mental problems. The only witness in the penalty phase had been the petitioner's mother. In concluding that counsel had been ineffective and that prejudice had been shown, the Court noted:

> The resulting prejudice is clear. The only testimony the jury heard at sentencing concerning appellant's mental history and condition, including the bizarre behavior he occasionally exhibited, was that presented by his mother. As her testimony makes clear, many others could have testified concerning his behavior; the fact that others did not do so undoubtedly diminished the impact on the jury of the facts she described.

846 F.2d at 653-54; see also Cooper v. State, 847 S.W.2d at 532 (citing Stephens). Likewise, but for counsel's deficiency, Dr. Pieper's and Dr. Ray's testimony would have supplied expert psychological proof about Goad's diagnosis of post-traumatic stress disorder, which this Court on direct review held to be relevant mitigation evidence.

It is further apparent that counsel's errors altered the entire evidentiary picture and had a pervasive effect on the inferences to be drawn from the

evidence.  See Strickland, 466 U.S. at 696-97, 104 S.Ct. at 2069.  Defense

counsel's summations to the jury were illustrative of their own failures:

> There's no way in the world that we can tell you
> exactly what happened over there.  We don't know.
> There's no way we can really find out, but obviously
> there was some very profound changes that he went
> through, and he's not been the same since he got out
> of the service.

Similarly,

> What we're really saying in this particular case is that
> Bill Goad, for whatever reasons, committed a crime
> which there's really no sort of explanation for it in a
> way.  We do know one thing, that when he came
> back from Vietnam, he was a changed person,
> whether the drugs changed him, whether the fact that
> his wife went off and moved in with another man while
> he was over there changed him, whether it was being
> away from home and in a foreign country that
> changed him.  There's no way to say that.

Likewise, the prosecution's summation exploited the failure of defense counsel

to introduce the available mitigating evidence:

> What has been shown to you, ladies and gentlemen
> of the jury, other than the fact that his attitude just
> changed over the years?  They have not shown you
> anything that really happened to him when he was in
> Vietnam.

The State reiterated this point in its final closing remarks:

> We had testimony nowhere that Mr. Goad did any
> fighting or shooting or shot at or lost a buddy or
> anything that has been intimated or hinted at; nothing
> whatsoever.  If there was any of that evidence, that
> would have come out because the Judge allowed,
> and properly so, very much leeway, great leeway, in
> the testimony of both Mr. and Mrs. Goad, Sr. as to
> what their son had undergone.  If he'd been
> undergoing any combat over there, gotten shell
> shocked and it had dramatically changed his
> personality, don't you know you would have heard it?
> But you didn't hear that.

-19-

These arguments underscored the prejudicial impact of counsel's errors. In Cooper v. State, supra, the Court of Criminal Appeals addressed a similar situation in concluding that counsel's deficiency had been prejudicial: "[T]he state strongly argued to the jury at the penalty phase that the petitioner had presented no credible evidence or documentation that he suffered from real emotional problems. Yet, the record of the post-conviction evidentiary hearing reflects that substantial evidence corroborating the petitioner's problems was readily available to be used." Id., 847 S.W.2d at 532.

Similarly, the failure to present the available mitigating evidence had a direct relation to the single aggravating factor found by the jury. The State presented proof that the petitioner had six prior convictions -- four for robbery and assault with intent to commit first degree murder, one for simple robbery, and one for armed robbery. Although this aggravating circumstance is often "more qualitatively persuasive and objectively reliable" than the other circumstances provided for in the capital sentencing statute, State v. Howell, 868 S.W.2d 238, 261 (Tenn. 1993), its strength would have been mitigated by evidence of Goad's post-traumatic stress syndrome, inasmuch as all the offenses on which this aggravating circumstance was based had occurred after Goad's return from Vietnam. Indeed, even without this mitigating evidence, the jury reported to the trial court they were deadlocked on the question of punishment four hours after retiring to deliberate. Accordingly, defense counsel's errors undermine our confidence in the outcome of the sentencing hearing and, therefore, there is a reasonable probability that, absent counsel's error, the jury would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.

The trial court's erroneous conclusion that the evidence was inadmissible at the initial sentencing hearing does not alter our findings that counsel were ineffective and that prejudice resulted. Indeed, in this case it is crystal clear that counsel's failure to properly investigate the evidence of post-traumatic stress disorder affected the result. In light of this Court's decision on direct review, Goad would have received a new sentencing hearing <u>without a remand</u> had counsel included Dr. Pieper's testimony in the record on appeal as an offer of proof. Accordingly, but for counsel's failure to identify and subpoena Dr. Pieper to testify at the initial sentencing hearing, Goad would have received a new sentencing hearing in his first appeal.

Finally, there is a "reasonable probability" that Goad would have received a new sentencing hearing following the remand if counsel had subpoenaed Dr. Pieper and presented his testimony as an offer of proof. Although the remand named only Dr. Ray, there is a reasonable probability that Goad would have received a new sentencing hearing had counsel presented some psychological expert proof that "credibly tend[ed] to establish that [petitioner] suffered from post-traumatic stress syndrome in February 1983."[7] Counsel failed to subpoena either Dr. Ray or Dr. Pieper or to present any evidence on that issue. Neither the trial court nor this Court was presented with any credible proof on the issue, and had no reason to believe any such proof existed. Counsel's deficiencies, at the very least, deprived Goad of a new sentencing hearing in which he would have been given the opportunity to present relevant mitigating evidence. Goad has established that he was not afforded his right to effective assistance of counsel

---

[7] <u>State v. Goad</u>, 707 S.W.2d at 854.

at the sentencing phase of his trial. Accordingly, Goad's death sentence must be vacated and the cause remanded for a new sentencing hearing.[8]

## CONCLUSION

We have determined that the record preponderates against the lower courts' findings that Goad was afforded his constitutional right to effective assistance of counsel at the sentencing phase of his capital trial. Accordingly, the judgment of the Court of Appeals affirming the trial court's denial of post-conviction relief is reversed. Goad's sentence of death is vacated and the cause remanded to the trial court for a new sentencing hearing. Costs of this appeal are taxed to the State of Tennessee.

_____
RILEY ANDERSON, Justice

**CONCUR:**

Birch, C.J.
Drowota and Reid, JJ.

White, J., Not Participating

---

[8] Because we have determined that this cause must be remanded for resentencing, Goad's assertions that counsel were ineffective for failure to investigate his drug abuse and prior head injury are moot.