# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE

Assigned on Briefs March 19, 2013

## QUINCY DEANGELO GARDNER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2006-A-391     Cheryl A. Blackburn, Judge**

_____

**No. M2012-01483-CCA-R3-PC - Filed April 11, 2013**

_____

Quincy Deangelo Gardner ("the Petitioner") filed for post-conviction relief from his conviction of first degree felony murder, arguing that he received ineffective assistance of counsel at trial. Following an evidentiary hearing, the post-conviction court denied relief. The Petitioner now appeals. Upon our thorough review of the record and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Marie Stacey, Nashville, Tennessee, for the appellant, Quincy Deangelo Gardner.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

A jury convicted the Petitioner of one count of first degree felony murder, and the trial court sentenced the Petitioner to life imprisonment. The Petitioner appealed, and this Court affirmed the Petitioner's judgment. State v. Quincy Deangelo Gardner, No. M2007-01081-CCA-R3-CD, 2008 Tenn. Crim. App. LEXIS 488, at *15 (Tenn. Crim. App. June 10, 2008), perm. app. denied (Tenn. Dec. 8, 2008). On direct appeal, this Court summarized the facts underlying the Petitioner's conviction as follows:

[T]he proof at trial showed that, in October 2005, the [Petitioner], along with his codefendant and Carlos Tillman, went to the Litton Apartments to obtain marijuana. While there, they had a conversation with a man who later robbed them at gunpoint. As the were exiting the apartment, the man pointed the gun at their heads and ordered them to take off their clothes, stating that he was searching for some lost drugs. The man returned their clothes, taking some cash, and left. The [Petitioner], who had been observed carrying a black semi-automatic .45-caliber pistol "a couple of times[,]" expressed a desire "to go back and get them . . . ."

On October 18, 2005, the [Petitioner], along with his brother, Marquis Talley, his codefendant, and a "young lady," drove through Litton Apartments. The group was riding in a black Toyota Corolla that belonged to the [Petitioner's] girlfriend. Mr. Talley stated that when they first went to the apartment complex on October 18, the group was looking for "some weed[.]" He also confirmed that the Defendant and his codefendant "might have been drinking that morning" and "maybe doing some of that powder" cocaine. They additionally "might have" been smoking marijuana "on top of that[.]"

According to Mr. Tal[le]y, while driving through the apartment complex, the [Petitioner] saw a man he recognized and then stated, "There go that dude that robbed me." They left and returned to the [Petitioner's] girlfriend's house, which took about ten minutes.

The [Petitioner] and codefendant dropped off Mr. Talley and the young lady at the residence, and the two men then returned to Litton Apartments. The car stopped near a large group of people (approximately eight to ten persons, including children) sitting on the porch talking. The victim, twenty-five-year-old Natalie Nicole Madison, was among this group. The [Petitioner], who was "ducking down," got out of the vehicle and started shooting.

The [Petitioner] chased one individual, Markeith Calloway, down a hallway, continuing to fire. The [Petitioner] ran behind the building and then returned to the car driven by his codefendant. When he was returning to the car, the [Petitioner] observed the victim lying on the ground. He stopped and asked, "did she get hit, did I hit her[?]" He then got in the car, and they drove away from the apartment complex.

Eyewitnesses, Victoria Sanford and Markeith Calloway, identified the [Petitioner] as the shooter at trial. According to another eyewitness, Nakkia Blanchard, the shooter stated, "nigger, I bet you won't rob nobody else" before

he shot. Alfreda Blanchard[1] heard the shooter state similar words: "[Y]ou won't rob me again, nigger, or you won't rob me again . . . ."

About ten minutes after the shooting, the [Petitioner] and codefendant returned to the [Petitioner's] girlfriend's house, and the [Petitioner] stated to Mr. Talley that "he think he done killed somebody [sic] [;] . . . he think he shot somebody." The next day, Talley, the [Petitioner], and codefendant went to Lisa Herlein's apartment in Ashland City, requesting to stay with her. While there, the three men went for a walk. Mr. Talley stated that the [Petitioner] did take his weapon with him to Ashland City. When the police arrived at Ms. Herlein's apartment, she consented to a search, and officers discovered the [Petitioner's] weapon.

The victim died as a result of a gunshot wound to the right side of her chest. Cartridge cases recovered from the crime scene were matched to the weapon found at Ms. Herlein's apartment in Ashland City.

The [Petitioner] relayed his version of the events to the jury:

> I was looking for some marijuana, and I get out the car. The car stopped. I get out the car, and I seen a person that I thought that robbed me. And when I seen him reaching in his coat, I thought he was fixing to pull out the same big old nine millimeter in my face. So I got scared and I threw my hand on my face and I fired a shot.

According to the [Petitioner], the person who had robbed him threatened to kill him if he ever saw the [Petitioner] again. The [Petitioner] claimed that he only had the gun for protection and chased the individual down the hallway because he was afraid and did not "want him to stop and take a shot back at" him. When he shot the second time, he aimed at the individual's legs. He also stated that he did not realize he had "hit" someone else and that he gave the gun to Mr. Talley.

Gardner, 2008 Tenn. Crim. App. LEXIS 488, at *2-6 (footnote in original).

The Petitioner subsequently filed a pro se petition and amended petition for post-conviction relief, alleging ineffective assistance of counsel. The post-conviction court

---

[1] At trial, Ms. Blanchard identified the codefendant as the shooter. However, just after the shooting, she was shown a photographic line-up and identified the [Petitioner] as the shooter.

appointed counsel for the Petitioner, and his appointed counsel then filed a second amended petition for post-conviction relief. The alleged specific bases for relief were as follows: trial counsel failed to file a motion regarding the firearm in evidence; trial counsel failed to procure a psychiatric evaluation for the Petitioner; trial counsel failed to explain to the Petitioner the consequences of his testifying at trial; trial counsel failed to submit jury instructions on the issue of voluntary intoxication; and trial counsel failed to inform the Petitioner of the State's plea offer.

At the post-conviction hearing, the Petitioner testified that he had asked his counsel at trial ("trial counsel") to file a motion in limine to request a psychological evaluation but that, to his knowledge, trial counsel did not file any pretrial motions on his behalf. He acknowledged that he had told trial counsel that, on the day of the shooting, he was "under the influence of drugs and alcohol." The Petitioner stated that he "was so drunk and high [he] blacked out." He denied that trial counsel ever explained to him the ramifications of testifying at trial or that trial counsel relayed a plea offer to him. He believed that trial counsel "took advantage" of him because trial counsel saw the Petitioner "was young and dumb and couldn't understand legal terms."

On cross-examination, the Petitioner also stated that trial counsel should have filed a motion regarding "the handgun" and the fact that "it had [his] fingerprints on the weapon." However, the Petitioner could not clarify what trial counsel could have requested from the trial court in this regard. The Petitioner agreed that he did not remember killing someone because he blacked out. When the State asked him if he remembered testifying at trial about the incident, the Petitioner stated, "I remember getting on the stand." As far as his testimony, he stated that he "just repeated what [trial counsel] told [him] to say." He did not remember his testimony at trial.

The post-conviction court confirmed with the Petitioner that he did not believe that he received a psychological evaluation prior to trial. However, the post-conviction court asked, "So Dr. Brown from Vanderbilt, when she sends me a letter that say's she evaluated you[,] . . . that's not accurate?" The Petitioner responded, "I don't remember Dr. Brown."

Trial counsel testified that he filed a pretrial motion on behalf of the Petitioner "to have him evaluated by Vanderbilt." He continued, "And they did evaluate him and sent a letter back saying they found him both sane at the time of the offense and capable of assisting in his own defense." Trial counsel stated that he did not file a motion regarding the handgun because "[t]here was no basis," in that "the gun was lawfully seized." He explained his reasoning to the Petitioner, and the Petitioner, in trial counsel's opinion, seemed to understand. Regarding the Petitioner's intoxication on the day of the shooting, trial counsel testified, "I recall there was some testimony about they may have smoked a joint that morning, but there was nothing to indicate that he was so intoxicated that he didn't know

what he was doing." Furthermore, he added, "[The Petitioner] relayed to me exactly, according to him, what happened, that they went back and saw this guy again. [The Petitioner] thought the guy was going for a gun, and he drew his gun and held his hand up and fired. And that's why he hit the unintended target." Accordingly, trial counsel did not see a need to submit a jury instruction regarding voluntary intoxication.

Trial counsel confirmed that he discussed with the Petitioner his prior record and the consequences of testifying at trial. However, trial counsel stated, "[B]asically what he was telling me was he fired in self-defense. And [the] essence of a self-defense defense is the defendant's state of mind. And I didn't know of any other way to get his state of mind in front of a jury other than him telling them." He added that the Petitioner was "adamant" to tell his story. Trial counsel explained that the State's witnesses' testimony was going to be that

> they were all standing around . . . and this car pulled up and [the Petitioner] got out and started that direction and just started firing. No other bystanders testified that they saw the intended victim with any kind of weapon or going for any kind of weapon. So if [the Petitioner] didn't tell it, it wasn't going to be told.

Trial counsel stated that the State extended a plea offer to the Petitioner of forty years at 100% but that the Petitioner rejected the offer. On cross-examination, trial counsel denied that he "told the [Petitioner] what his story needed to be when he testified." He agreed that this post-conviction hearing was the first time he heard the Petitioner claim that he blacked out during the shooting.

The post-conviction court took the matter under advisement and issued a written order denying post-conviction relief. In its order, the post-conviction court first discussed the Petitioner's contention that trial counsel should have attempted to suppress the firearm. The court accredited the testimony of trial counsel that "he did not file a suppression motion because the gun had been lawfully seized and that he explained all this to Petitioner who appeared to understand." Furthermore, the post-conviction court noted that, from its familiarity with the case at trial, "there is no legal basis to argue the firearm be suppressed." Accordingly, the court determined that the Petitioner failed to establish ineffective assistance on this basis.

Next, the post-conviction court considered the Petitioner's claim that trial counsel was ineffective in ensuring that the Petitioner complete a psychiatric evaluation. The court found trial counsel's testimony credible that he filed a pretrial motion requesting a psychiatric evaluation and that Vanderbilt completed an evaluation of the Petitioner. Moreover, the court found that the letter submitted by Dr. Brown discussing her evaluation of the Petitioner

supported trial counsel's testimony. Thus, the court found that such evidence "negates" the Petitioner's claim.

The post-conviction court then discussed the Petitioner's assertion that trial counsel was ineffective by not submitting a jury instruction regarding voluntary intoxication. It accredited trial counsel's testimony that

> when they prepared for trial Petitioner was able to provide a narrative of what transpired on October 15, 2008, and Petitioner's trial testimony matched the story Petitioner previously had told [trial] counsel. Based on the fact Petitioner was able to provide a cohesive narrative about what happened, Trial Counsel saw no grounds to request an intoxication instruction even though Petitioner admitted he had smoked a marijuana joint earlier that day.

Thus, the court found that trial counsel's testimony "in conjunction with the Petitioner's trial testimony negates Petitioner's claim."

The post-conviction court also considered the Petitioner's claim that trial counsel was ineffective in failing to explain adequately to the Petitioner the consequences of testifying at trial. The court accredited trial counsel's denial that he told the Petitioner what to say, despite the Petitioner's insistence that trial counsel "took advantage of him and that [the Petitioner] simply parroted what Trial Counsel advised him to say on the stand." Rather, the court found trial counsel's testimony credible that he "simply told Petitioner to relay his version of what transpired to support Petitioner's self-defense claim, which . . . was the only plausible defense in light of what Petitioner had told [trial counsel had] happened." Accordingly, the post-conviction court determined that the Petitioner failed to satisfy his burden on this claim.

Finally, the post-conviction court discussed the Petitioner's assertion that trial counsel was ineffective in failing to notify the Petitioner of the State's plea offer. The post-conviction court found trial counsel's testimony credible over that of the Petitioner that trial counsel conveyed the offer extended by the State and that the Petitioner rejected it. The court added, "Additionally, . . . Trial Counsel testified that Petitioner was 'adamant' to share his version of events." Thus, the post-conviction court determined that the Petitioner failed to establish his right to relief on this claim. Accordingly, the court denied post-conviction relief, and the Petitioner timely appealed.

## Analysis

### *Standard of Review*

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006). See Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Sexton, 151 S.W.3d at 531.

### *Ineffective Assistance of Counsel*

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel at trial.[2] Both the United States Supreme Court and the Tennessee Supreme Court have recognized that this right is to "reasonably effective" assistance, which is assistance that falls "within the range of competence demanded of attorneys in criminal cases." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Procedure Act. See Tenn. Code Ann. § 40-30-103; Pylant, 263 S.W.3d at 868.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two prongs: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. See Strickland, 466 U.S. at 687; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The petitioner's failure to establish either prong is fatal to

---

[2] The Sixth Amendment right to counsel is applicable to the States through the Fourteenth Amendment to the United States Constitution. See Gideon v. Wainwright, 372 U.S. 335, 342 (1963); State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993).

his or her claim of ineffective assistance of counsel. Goad, 938 S.W.2d at 370. Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong. Id.

To establish the first prong of deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting Strickland, 466 U.S. at 688)). Our Supreme Court has explained that:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

Baxter, 523 S.W.2d at 934-35 (quoting Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974)). When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." Pylant, 263 S.W.3d at 869 (citing State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999)). "A reasonable probability of being found guilty of a lesser charge . . . satisfies the second prong of Strickland." Id.

## Firearm Evidence

The Petitioner first asserts that trial counsel was ineffective in not filing a motion to suppress the firearm associated with the shooting. Looking first to the deficiency prong, the post-conviction court, in its written order, found trial counsel's testimony credible that "he did not file a suppression motion because the gun had been lawfully seized and that he explained all this to Petitioner who appeared to understand." Furthermore, the post-conviction court noted that, from its familiarity with the case at trial, "there is no legal basis to argue the firearm be suppressed."

The evidence does not preponderate against the post-conviction court's findings. At the post-conviction hearing, the Petitioner could not specify upon what grounds he would have wanted the firearm suppressed. Trial counsel testified that "[t]here was no basis" to file a suppression motion, and, without any showing otherwise by the Petitioner, we "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Honeycutt, 54 S.W.3d at 767 (quoting Strickland, 466 U.S. at 689).

The Petitioner has failed to establish that trial counsel was deficient, and, as a result, we need not discuss the prejudice prong. See Goad, 938 S.W.2d at 370. Thus, the Petitioner is entitled to no relief on this issue.

## Psychiatric Evaluation

The Petitioner also contends that trial counsel failed to procure a psychiatric evaluation for the Petitioner. Turning to the deficiency prong, the post-conviction court accredited trial counsel's testimony that he filed a pretrial motion requesting a psychiatric evaluation and that Vanderbilt completed an evaluation of the Petitioner. Moreover, the court found that the letter submitted by Dr. Brown discussing her evaluation of the Petitioner supported trial counsel's testimony.

The evidence, once again, does not preponderate against the post-conviction court's findings. Although the Petitioner claimed at the post-conviction hearing that he did not remember Dr. Brown, trial counsel recalled the Petitioner's evaluation by Vanderbilt and the letter Vanderbilt sent "saying they found [the Petitioner] both sane at the time of the offense and capable of assisting in his own defense." The State entered the letter from Vanderbilt as an exhibit, and it is included in the record on appeal. Thus, the Petitioner has failed to establish deficient performance, so we will not discuss the prejudice prong. See Goad, 938 S.W.2d at 370. The Petitioner may enjoy no relief on this issue.

## Jury Instruction

Next, the Petitioner claims that trial counsel was ineffective in not submitting a jury instruction regarding the voluntary intoxication of the Petitioner. As to the deficiency prong, the post-conviction court, in its order, accredited trial counsel's testimony that

> when they prepared for trial Petitioner was able to provide a narrative of what transpired on October 15, 2008, and Petitioner's trial testimony matched the story Petitioner previously had told [trial] counsel. Based on the fact Petitioner was able to provide a cohesive narrative about what happened, Trial Counsel saw no grounds to request an intoxication instruction even though Petitioner admitted he had smoked a marijuana joint earlier that day.

We agree with the post-conviction court. Although the Petitioner claimed at the post-conviction hearing that he did not remember any of the events that transpired during the shooting, trial counsel testified at the post-conviction hearing that the Petitioner clearly conveyed to him the time line of events as the Petitioner remembered it. Furthermore, trial counsel stated, "I recall there was some testimony about they may have smoked a joint that morning, but there was nothing to indicate that he was so intoxicated that he didn't know what he was doing." Based on the Petitioner's story, trial counsel did not think it was necessary to submit an instruction regarding voluntary intoxication.

Once again, we will presume that trial counsel's conduct was reasonable under the circumstances, see Honeycutt, 54 S.W.3d at 767, and the Petitioner has failed to establish otherwise. Thus, we hold that trial counsel's representation was not deficient and will not consider the prejudice prong. See Goad, 938 S.W.2d at 370. The Petitioner is entitled to no relief on this issue.

## Petitioner's Testifying At Trial

Additionally, the Petitioner argues that trial counsel was ineffective in failing to explain adequately to the Petitioner the consequences of testifying at trial. Looking first to the deficiency prong, the post-conviction court accredited trial counsel's denial that he told the Petitioner what to say, despite the Petitioner's insistence that trial counsel "took advantage of him and that [the Petitioner] simply parroted what Trial Counsel advised him to say on the stand." Rather, the court found trial counsel's testimony credible that he "simply told Petitioner to relay his version of what transpired to support Petitioner's self-defense claim, which . . . was the only plausible defense in light of what Petitioner had told [trial counsel had] happened."

The evidence does not preponderate against the post-conviction court's findings. Trial counsel confirmed at the post-conviction hearing that he discussed with the Petitioner the Petitioner's prior record and the consequences of testifying at trial. However, trial counsel stated that the Petitioner was "adamant" that he tell his story of what transpired. Moreover, trial counsel saw no way to get the self-defense claim before the jury other than through the Petitioner's own testimony. The Petitioner has failed to establish that trial counsel was deficient in this regard. Therefore, we need not address the prejudice prong. See Goad, 938 S.W.2d at 370. Accordingly, the Petitioner is entitled to no relief on this issue.

### State's Plea Offer

Finally, the Petitioner avers that trial counsel failed to notify the Petitioner of the State's plea offer. We note that trial "counsel's failure to relate a plea offer to a defendant renders counsel's representation deficient[, as] was established by [the Tennessee Supreme] Court in Harris v. State, 875 S.W.2d 662 (Tenn. 1994)." State v. Garrison, 40 S.W.3d 426, 430-31 (Tenn. 2000). The prejudice analysis changes in this context:

> the petitioner must show that there is a reasonable probability that he or she would have accepted the plea had it been properly communicated to him or her. Such a "reasonable probability" is defined as a "probability sufficient to undermine confidence in the outcome" of the proceedings.

Id. (citations omitted).

Regarding the deficiency prong, the post-conviction court found trial counsel's testimony credible over that of the Petitioner that trial counsel conveyed the offer extended by the State and that the Petitioner rejected it. The court added, "Additionally, . . . Trial Counsel testified that Petitioner was 'adamant' to share his version of events."

We will defer to the post-conviction court's credibility finding in this regard. See Momon, 18 S.W.3d at 156. Thus, the Petitioner has failed to establish deficient performance on the part of trial counsel, and we will not discuss the prejudice prong. See Goad, 938 S.W.2d at 370. Accordingly, the Petitioner is entitled to no relief on the basis of ineffective assistance of counsel.

## CONCLUSION

For the foregoing reasons, the Petitioner has failed to establish that he is entitled to post-conviction relief. Therefore, we affirm the judgment of the post-conviction court denying relief.

_____
JEFFREY S. BIVINS, JUDGE