IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 25, 2021

## DEWEY BURTON, JR. v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 109890     Scott Green, Judge**

_____

### No. E2020-01699-CCA-R3-PC

_____

The petitioner, Dewey Burton, Jr., appeals the denial of his petition for post-conviction relief, which petition challenged his Knox County Criminal Court Jury conviction of aggravated child neglect, alleging that he was deprived of the effective assistance of counsel.  Discerning no error, we affirm the denial of post-conviction relief.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and JILL BARTEE AYERS, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Dewey Burton, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Charme P. Allen, District Attorney General; and Nathaniel Ogle, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case arose from an incident in which the petitioner caused his girlfriend's 17-month-old child to suffer second-degree burns from hot bathwater.  *State v. Dewey Burton, Jr.*, No. E2015-00879-CCA-R3-CD, 2016 WL 3351316 (Tenn. Crim. App., Knoxville, June 9, 2016).  This court summarized the evidence on direct appeal:

> [The petitioner] placed the unclothed [17]-month-old victim in the back of the bathtub and left the bathroom while the hot water was running.  In [the petitioner's] absence, the victim sustained second degree burns on over seven percent of his body, and [the petitioner] did not take the victim to the hospital until the following morning.  The victim spent four days in the

hospital being treated for his burns, and he still displays some physical scarring. Although the stopper was not in the tub and [the petitioner] was not far from the bathroom, it is clear that [the petitioner] knowingly left the victim unattended under circumstances that resulted in serious bodily injury.

*Id.* at *9. The jury convicted the petitioner of aggravated child neglect, and the trial court imposed a 15-year sentence. *Id.* at *1. This court affirmed the defendant's conviction on direct appeal. *Id.*

The defendant filed a timely pro se petition for post-conviction relief and, after the appointment of counsel, filed an amended petition, arguing that trial counsel performed deficiently by failing to call the victim's mother as a witness.

At the October 2020 evidentiary hearing, trial counsel testified that he received discovery materials in this case and discussed with the defendant the charges against him. Included in the discovery materials was a recorded interview of the victim's mother, which interview trial counsel had transcribed. In her statement, the victim's mother said that she was not home at the time the victim was burned, but when she returned home later that evening, the defendant told her what had occurred, and she looked in on the victim who appeared to be sleeping normally. The victim's mother also said that the next morning, the defendant told her that the victim's condition had worsened overnight, and they immediately sought medical attention. Trial counsel said that the victim's mother's statement also included comments that he believed were damaging to the defense. Specifically, the victim's mother said that she believed that the petitioner was "underplaying the injuries, that the child had to be in worse condition that night than he told her, and that had he told her what she believed to be the truth about the extent of the burns, she would've taken that child to the hospital that night."

Trial counsel said that he did not have an opportunity to interview the victim's mother because he was "not sure that she could be found. . . . [S]he was actually a State's witness on the indictment, and I was getting information from them too that they were unable to locate her." Although he had an investigator attempt to locate her, trial counsel said that he did not consider calling the victim's mother as a witness because he was concerned about her potential testimony. He said that he worried that the State would locate her and that she would testify that the petitioner "had underplayed the [victim's] injuries" on the night of the incident.

Trial counsel acknowledged that the victim's mother's statement that the victim appeared to be sleeping normally was consistent with the defendant's testimony and could have served to cast doubt on the testimony of the expert witness physician who

-2-

testified that the victim would have been in pain and would not have been able to sleep comfortably through the night.

During cross-examination, trial counsel reiterated that he did not seek to call the victim's mother as a witness because he did not believe her testimony would be beneficial to the defense. He maintained that the mother had made several comments in her statement that he considered damaging to the defense. First, the victim's mother indicated that she believed that the petitioner had given the victim Tylenol before putting him to bed. She also said that the petitioner did not ordinarily give her children baths and that she had not asked him to do so. Although the petitioner did not ordinarily check on her children in the mornings, he did so on the morning after the incident when he told the victim's mother that the victim looked worse than the night before. Additionally, the victim's mother said that the she no longer wanted the petitioner in her home after the incident. Finally, the victim's mother indicated that the petitioner "had accused her of having an affair . . . and that he could be jealous."

On redirect examination, trial counsel acknowledged that the victim's mother expressed that she trusted the petitioner with her children and that "she couldn't imagine that he had done this on purpose."

The post-conviction court took judicial notice of the trial and appellate records in the underlying case, and the transcript of the victim's mother's statement was exhibited to the hearing. In its written order denying post-conviction relief, the post-conviction court accredited trial counsel's testimony and found that counsel's decision to forgo calling the victim's mother as a witness was a reasonable strategic decision.

In this timely appeal, the petitioner reasserts his argument that trial counsel should have called the victim's mother as a witness.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citation omitted), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Here, the petitioner has failed to carry his burden to prove by clear and convincing evidence sufficient facts to support his claim that trial counsel's representation was deficient. Trial counsel's accredited testimony established that he believed that the victim's mother's testimony could be detrimental to the defense and that he did not seek to call her as a witness for strategic reasons. Under the circumstances, considering that the mother's statement included both potentially helpful and harmful comments, this was a reasonable decision, and we will not second-guess counsel's strategy.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

-4-